172 Cal.App.4th 183 (2009)
In re B.S., JR., a Person Coming Under the Juvenile Court Law.
RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, Plaintiff and Respondent,
v.
B.S., SR., Defendant and Appellant.
No. E045748.
Court of Appeals of California, Fourth District, Division Two.
March 17, 2009.
CERTIFIED FOR PARTIAL PUBLICATION[*]
*185 Brent Riggs, under appointment by the Court of Appeal, for Defendant and Appellant.
Joe S. Rank, County Counsel, and Carole A. Nunes Fong, Deputy County Counsel, for Plaintiff and Respondent.
Leslie A. Barry, under appointment by the Court of Appeal, for Minor.

OPINION
RICHLI, J.
B.S., Sr. (the father), appeals from the juvenile court's issuance of a restraining order under Welfare and Institutions Code section 213.5. The challenged order names his son, B.S., Jr. (B.S.)  the subject of this juvenile dependency proceeding  as a protected person, along with B.S.'s mother and *186 maternal grandmother. The father contends that the juvenile court lacked jurisdiction to issue the order, because the criminal court had already issued a similar restraining order under Penal Code section 136.2. He further contends that there was insufficient evidence to support the issuance of the restraining order with respect to B.S. We find no error. Hence, we will affirm.

I

FACTUAL AND PROCEDURAL BACKGROUND
The father and T.L. (the mother) are the parents of B.S. As of February 2008, when B.S. was seven months old, they were all living together. The father had been charged with spousal battery (Pen. Code, § 273.5, subd. (a)) against the mother and was out on bail. In addition, he was on probation for a 2003 conviction for assault with a deadly weapon. (Pen. Code, § 245, subd. (a)(1).)
One night, a female friend of the mother who was visiting from out of state called 911. When officers arrived, she reported that the father and the mother had been in their bedroom when she heard the father arguing with the mother and then hitting her. She went into the bedroom, where she saw the father "pushing and swinging wildly" at the mother as they "stood over" B.S. She pulled the father away, then took B.S. out to the kitchen.
When the friend returned to the bedroom, the father pushed the mother onto a bed and held her down. Meanwhile, B.S. "crawled back into the bedroom." The friend pulled the father away again, then took B.S. out to the kitchen again and placed him in a jumper.
The mother followed, pursued by the father. The father then grabbed the mother and "threw her down on top of" B.S. In doing so, he fell on top of both the mother and B.S. When the friend pulled the father away yet again, he hit her in the eye. The friend called 911. The father threatened to come back and shoot both her and the mother, then fled.
The mother confirmed that the father had pushed her, causing her to land on top of B.S. B.S. had no apparent injuries. There was a hole in the bedroom wall; the mother explained that the father had caused it by throwing a telephone during an argument. Similarly, the bathroom door was broken and off its hinges; the mother admitted that she and the father had broken it while "fooling around."
*187 The maternal grandmother reported that the father had been physically abusing the mother for a long time. The mother "minimize[d] the domestic violence between her and the father" and refused to seek shelter elsewhere. As a result, B.S. was detained and the Riverside County Department of Public Social Services (the Department) filed a dependency petition concerning him.
After about two weeks, B.S. was placed with the maternal grandmother.
Shortly before the jurisdictional hearing, the father was released from custody.
On March 17, 2008, at the jurisdictional hearing, the juvenile court found that it had jurisdiction based on failure to protect. (Welf. & Inst. Code, § 300, subd. (b).) It authorized the mother to reside with the maternal grandmother and B.S., provided that she not be left alone with B.S.
Also on March 17, 2008, the criminal court[1] issued a restraining order against the father (criminal order).[2] It was issued on Judicial Council form CR-160 (Criminal Protective OrderDomestic Violence). It named as protected persons the mother and B.S. The criminal order provided, among other things, that the father "must not harass, strike, threaten, assault (sexually or otherwise), follow, stalk, molest, destroy or damage personal or real property, disturb the peace, keep under surveillance, or block movements of" the protected persons. The criminal order also provided, "[T]his order takes precedence over any conflicting protective order . . . if the protected person is a victim of domestic violence . . . ."[3]
On March 20, 2008, at the request of the Department, the juvenile court issued an ex parte temporary restraining order against the father, as well as an order to show cause (OSC) why a restraining order after hearing should not issue.
*188 In April 2008, at the hearing on the OSC, the father's counsel objected to the proposed restraining order. She noted that the criminal court had already issued a restraining order, then added: "Father's position at this time is that that's a sufficient restraining order . . . .
"If . . . the mother would like the [maternal grandmother] added to the restraining order, that can always be done with the current restraining order in the criminal court. We can always go back to that court and have that modified. But at this point in time, I think it would be improper to have another restraining order from this Court that . . . would actually be in contradiction to that restraining order. It's not really a modification if we're adding something that's more restrictive."
The juvenile court nevertheless issued the restraining order (juvenile order). It was issued on Judicial Council form JV-250 (Restraining Order Juvenile). It named as protected persons the mother, B.S., and the maternal grandmother. Much like the criminal order (if more grammatically), the juvenile order provided that the father "must not harass, attack, strike, threaten, assault (sexually or otherwise), hit, follow, stalk, molest, destroy personal property of, disturb the peace of, keep under surveillance, or block movements of" the protected persons.
In addition, however, the juvenile order prohibited the father from contacting the protected persons, "except for brief and peaceful contact as required for court-ordered visitation of children . . . ." It further required the father to stay at least 100 yards away from the protected persons, as well as from their vehicles, homes, and workplaces (or, in B.S.'s case, his school).
Finally, the juvenile order provided: "If a criminal restraining order (form CR-160) conflicts with a juvenile restraining order (form JV-250), a law enforcement agency must enforce the criminal order. . . . Any nonconflicting terms of the juvenile custody or visitation order remain in full force."

II

THE PROPRIETY OF ISSUING A SEPARATE RESTRAINING ORDER
The father contends that, because the criminal court had already issued a restraining order, the juvenile court lacked jurisdiction to issue its own restraining order.

A. Statutory Background.

Welfare and Institutions Code section 213.5 provides: "(a) After a petition has been filed . . . to declare a child a dependent child of the juvenile court, *189 and until the time that the petition is dismissed or dependency is terminated, upon application in the manner provided by Section 527 of the Code of Civil Procedure, the juvenile court may issue ex parte orders (1) enjoining any person from molesting, attacking, striking, sexually assaulting, stalking, or battering the child or any other child in the household; (2) excluding any person from the dwelling of the person who has care, custody, and control of the child; and (3) enjoining any person from behavior, including contacting, threatening, or disturbing the peace of the child, that the court determines is necessary to effectuate orders under paragraph (1) or (2). A court may also issue an ex parte order enjoining any person from contacting, threatening, molesting, attacking, striking, sexually assaulting, stalking, battering, or disturbing the peace of any parent . . . or current caretaker of the child . . . . [¶] . . . [¶]
"(c) If a temporary restraining order is granted without notice, the matter shall be made returnable on an order requiring cause to be shown why the order should not be granted . . . .
"(d) The juvenile court may issue, upon notice and a hearing, any of the orders set forth in subdivisions (a), (b), and (c). . . . [¶] . . . [¶]
"(h) Any willful and knowing violation of any order granted pursuant to subdivision (a), (b), (c), or (d) shall be a misdemeanor punishable under Section 273.65 of the Penal Code."
Penal Code section 136.2, as relevant here, provides: "(a) . . . [U]pon a good cause belief that harm to . . . a victim or witness has occurred or is reasonably likely to occur, any court with jurisdiction over a criminal matter may issue orders including, but not limited to, the following:
"(1) Any order issued pursuant to Section 6320 of the Family Code.[[4]] [¶] . . . [¶]
"(e)(1) In all cases where the defendant is charged with a crime of domestic violence, . . . the court shall consider issuing the above-described orders on its own motion. . . .
"(2) In those cases in which a complaint, information, or indictment charging a crime of domestic violence . . . has been issued, a restraining order *190 or protective order against the defendant issued by the criminal court in that case has precedence in enforcement over any civil court order against the defendant . . . . [¶] . . . [¶]
"(f) On or before January 1, 2003, the Judicial Council shall promulgate a protocol, for adoption by each local court in substantially similar terms, to provide for the timely coordination of all orders against the same defendant and in favor of the same named victim or victims. The protocol shall include, but shall not be limited to, mechanisms for assuring appropriate communication and information sharing between criminal, family, and juvenile courts concerning orders and cases that involve the same parties, and shall permit a family or juvenile court order to coexist with a criminal court protective order . . . ."
California Rules of Court, rule 5.630(l) provides: "If a restraining order has been issued by the juvenile court under [Welfare and Institutions Code] section 213.5, no court other than a criminal court may issue any order contrary to the juvenile court's restraining order." (Italics added.)

B. Analysis.

(1) "`Under the rule of exclusive concurrent jurisdiction, "when two [California] superior courts have concurrent jurisdiction over the subject matter and all parties involved in litigation, the first to assume jurisdiction has exclusive and continuing jurisdiction over the subject matter and all parties involved until such time as all necessarily related matters have been resolved." [Citations.] The rule is based upon the public policies of avoiding conflicts that might arise between courts if they were free to make contradictory decisions or awards relating to the same controversy, and preventing vexatious litigation and multiplicity of suits.' [Citation.]" (People ex rel. Garamendi v. American Autoplan, Inc. (1993) 20 Cal.App.4th 760, 769-770 [25 Cal.Rptr.2d 192].)
(2) Admittedly, "the rule of exclusive concurrent jurisdiction does not require absolute identity of parties, causes of action or remedies sought in the initial and subsequent actions. [Citations.] If the court exercising original jurisdiction has the power to bring before it all the necessary parties, the fact that the parties in the second action are not identical does not preclude application of the rule. Moreover, the remedies sought in the separate actions need not be precisely the same so long as the court exercising original jurisdiction has the power to litigate all the issues and grant all the relief to which any of the parties might be entitled under the pleadings. [Citations.]" (Plant Insulation Co. v. Fibreboard Corp. (1990) 224 Cal.App.3d 781, 788 [274 Cal.Rptr. 147].)
*191 The rule of exclusive concurrent jurisdiction does not avail the father, for several reasons. First, the parties and the remedies in the two proceedings were not the same. The People were a party to the criminal proceeding, but not the juvenile proceeding; the Department was a party to the juvenile proceeding, but not the criminal proceeding. Neither court had the power to bring all of the parties before it. Similarly, the main remedy in the criminal proceeding was imposing criminal punishment, which the juvenile court had no power to order, whereas the main remedy in the juvenile proceeding was changing custody, which the criminal court had no power to order.
(3) Second, "the rule of exclusive concurrent jurisdiction is a rule of policy and countervailing policies may make the rule inapplicable. [Citation.]" (People ex rel. Garamendi v. American Autoplan, Inc., supra, 20 Cal.App.4th at p. 770.) Accordingly, the Legislature can alter or even abrogate the rule of exclusive concurrent jurisdiction.
Here, the Legislature has provided that a restraining order issued by a criminal court against a defendant charged with domestic violence "has precedence in enforcement over any civil court order against the defendant. . . ." (Pen. Code, § 136.2, subd. (e)(2).) Thus, it evidently contemplates the issuance of a criminal restraining order, despite a preexisting civil restraining order, or vice versa.
(4) Moreover, the Legislature has directed the Judicial Council to "promulgate a protocol . . . for the timely coordination of all orders against the same defendant and in favor of the same named victim or victims." (Pen. Code, § 136.2, subd. (f).) Any such protocol must "permit a family or juvenile court order to coexist with a criminal court protective order . . . ." (Ibid.) The requisite protocol is set forth in California Rules of Court, rule 5.450(c), entitled, "Court communication protocol for domestic violence and child custody orders." It provides that every superior court must adopt local rules "for communication among courts issuing criminal court protective orders and courts issuing orders involving child custody and visitation . . . ." (Cal. Rules of Court, rule 5.450(c)(1).)
(5) Defendant complains that Riverside County has not adopted such local rules. However, it has adopted a rule providing, "Orders made by the Juvenile Court as to parent/child contact shall take precedence over any orders made pursuant to a Criminal, Family or Probate matter. However, Criminal Protective Orders that are in conflict with a Juvenile Court order take precedence over the Juvenile Court order." (Super. Ct. Riverside County, *192 Local Rules, rule 12.0060.)[5] Accordingly, the Legislature, the Judicial Council, and the Riverside County Superior Court have all provided that a juvenile court restraining order can "coexist" with a criminal court restraining order.
(6) The father also relies on California Rules of Court, rule 5.630(l), which, as noted, provides that only a criminal court can issue an order contrary to a juvenile court's restraining order. The father concludes that the criminal court's jurisdiction is "paramount." The rule, however, does not preclude a juvenile court from issuing its own restraining order, if it is not contrary to an existing criminal court restraining order. Indeed, it does not even preclude a juvenile court from issuing an order that is contrary to an existing criminal court restraining order; it simply provides that, in that case, in accordance with Penal Code section 136.2, subdivision (e)(2), the criminal court's order will be entitled to precedence.
The father, invoking the policy behind the rule of exclusive concurrent jurisdiction, argues that he has been saddled with "the burden of having to deal with multiple courts and potentially conflicting orders." However, he has not pointed out any actual conflict between the two orders. The criminal order does not require him to do anything that the juvenile order prohibits, or vice versa. Admittedly, the juvenile order is more restrictive than the criminal order. Nevertheless, it is possible for him to comply with both. In any event, the juvenile order provided that any apparent conflict must be resolved in favor of the criminal order, thus making any actual conflict impossible.
The father argues that the two orders are "confusing" with regard to which order takes precedence. But not so. The criminal order provided, "[T]his order takes precedence over any conflicting protective order . . . if the protected person is a victim of domestic violence . . . ." The juvenile order then similarly provided, "If a criminal restraining order . . . conflicts with a juvenile restraining order . . ., a law enforcement agency must enforce the criminal order. . . . Any nonconflicting terms of the juvenile custody or visitation order remain in full force." Thus, both orders consistently provided that, in the event of an actual conflict, the criminal order would take precedence.
We also note that the father could not be criminally prosecuted twice, for contempt or otherwise, based on a single act that violated both orders. This would be precluded, as a matter of state law, by Penal Code section 654 (In re Farr (1976) 64 Cal.App.3d 605, 612-616 [134 Cal.Rptr. 595]), and as a matter of federal constitutional law, by the double jeopardy clause (Colombo v. *193 New York (1972) 405 U.S. 9, 10-11 [30 L.Ed.2d 762, 92 S.Ct. 756]; People v. Lombardo (1975) 50 Cal.App.3d 849, 853-854 [123 Cal.Rptr. 755]).
For purposes of this case, we need not decide how the father would go about seeking to modify or dissolve the terms of the protective orders. We may assume, without deciding, that he would not only have to litigate in both courts, but also to prevail in both. Even if so, the Legislature has clearly provided that a criminal court restraining order and a juvenile court restraining order must be allowed to coexist; we cannot nullify this directive based on our own judgment as to whether this is good public policy.
We therefore conclude that, despite the existence of the criminal order, the juvenile court did not err by entering the juvenile order.

III

THE SUFFICIENCY OF THE EVIDENCE TO SUPPORT A RESTRAINING ORDER WITH RESPECT TO B.S.
The father also contends that there was insufficient evidence to support the issuance of a restraining order naming B.S. as a protected person.
"[W]e view the evidence in a light most favorable to the respondent, and indulge all legitimate and reasonable inferences to uphold the juvenile court's determination. If there is substantial evidence supporting the order, the court's issuance of the restraining order may not be disturbed. [Citation.]" (In re Cassandra B. (2004) 125 Cal.App.4th 199, 210-211 [22 Cal.Rptr.3d 686].)
(7) Welfare and Institutions Code section 213.5 permits the juvenile court to issue an order "enjoining any person from molesting, attacking, striking, sexually assaulting, stalking, or battering the child . . . ." (Welf. & Inst. Code, § 213.5, subd. (a).) Accordingly, evidence that the restrained person has previously molested, attacked, struck, sexually assaulted, stalked, or battered the child is certainly sufficient. (In re Brittany K. (2005) 127 Cal.App.4th 1497, 1512 [26 Cal.Rptr.3d 487] [evidence of previous stalking]; In re Cassandra B., supra, 125 Cal.App.4th at pp. 210-213 [evidence of previous molestation].) However, the statute does not state that such evidence is necessary.
The father analogizes to the renewal of a protective order under the Domestic Violence Prevention Act (Fam. Code, § 6200 et seq.). It has been *194 held that this requires evidence of a "`reasonable apprehension' of future abuse." (Ritchie v. Konrad (2004) 115 Cal.App.4th 1275, 1287-1290 [10 Cal.Rptr.3d 387].) We do not entirely agree. Here, we are not concerned with the renewal of a restraining order, but rather with the issuance of a restraining order in the first instance. Ritchie found that the standard for renewal was unsettled, in part because the applicable statute expressly provided that renewal did not require "`a showing of any further abuse since the issuance of the original order,'" but failed to specify what renewal did require. (Id. at p. 1287, fn. omitted, quoting Fam. Code, § 6345, subd. (a).) Here, the better analogy is to Family Code section 6340, which permits the issuance of a protective order under the Domestic Violence Prevention Act in the first instance, if "failure to make [the order] may jeopardize the safety of the petitioner . . . ." (Fam. Code, § 6340, subd. (a); see also Fam. Code, § 6320.)
(8) The juvenile court could reasonably find that failure to issue a protective order might jeopardize B.S.'s physical safety. The father had repeatedly committed domestic violence against the mother. There was also evidence that, during these outbursts, he had little ability to control himself. During previous incidents, he had torn a door off its hinges and knocked a hole in the wall. The latest incident had occurred when he was both on bail and on probation. In it, the mother's friend saw him "pushing and swinging wildly" at the mother as they both "stood over" B.S. Ultimately, he grabbed the mother and "threw her down on top of" B.S. The father argues that B.S. became involved only "incidentally," when "the parents lost their balance while struggling." However, it is fairly inferable that the father threw the mother onto B.S. intentionally, even if he himself then fell accidentally. This demonstrated, at a minimum, willful disregard for the safety of B.S.
In his reply brief, the father argues that "[w]hile the evidence . . . may have justified an order separating the father from the mother[,] . . . that evidence did not support a separate provision aimed at keeping the father from the son in the mother's absence." The juvenile court, however, could reasonably infer, from the father's tendency to resort to violence as well as from his evident lack of impulse control, that he might be a threat to B.S.'s safety. Such a threat could arise, even in the mother's absence, if the father got angry with another adult or with B.S. himself. Even assuming an opposite inference might be equally reasonable, we are not authorized to second-guess the juvenile court on this point.
We therefore conclude that there was sufficient evidence to support the issuance of a restraining order protecting B.S.

*195 IV

DISPOSITION
The order appealed from is affirmed.
Hollenhorst, Acting P. J., and McKinster, J., concurred.
NOTES
[*] Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of footnote 1.
[1] *

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
* See footnote, ante, page 183.
[2] The criminal order recited that it was entered posttrial, as a condition of probation, pursuant to Penal Code section 1203.097. In light of the whole record, however, it is apparent that this was a typographical error, and that it was actually entered before trial, pursuant to Penal Code section 136.2.
[3] By checking a box on the form, the court could have provided, "Any . . . [section] 213.5 [Welfare and Institutions Code] issued in Juvenile Court that is more restrictive than this order takes precedence over this order and shall be enforced." However, this box was not checked.
[4] Family Code section 6320, subdivision (a) provides: "The court may issue an ex parte order enjoining a party from molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, harassing, telephoning, . . . destroying personal property, contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of the other party, and, in the discretion of the court, on a showing of good cause, of other named family or household members."
[5] We express no opinion on whether the local rule satisfies the requirements of California Rules of Court, rule 5.450. Even if not, we cannot see how the father has been prejudiced.