Filed 6/26/15  In re K.H. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re K.H., a Person Coming Under the Juvenile Court Law. | B261166 (Los Angeles County Super. Ct. No. DK07739) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff,<br><br>P.M.,<br><br>        Respondent,<br><br>        v.<br><br>R.H.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Stephen Marpet, Juvenile Court Referree.  Affirmed.

Ernesto Paz Rey, under appointment by the Court of Appeal, for Defendant and Appellant.

Leslie A. Barry, under appointment by the Court of Appeal, for Respondent.

* * * * * *

In this dependency case, the juvenile court removed two-year-old K.H. from R.H.'s (father's) custody and placed her with P.M. (mother) after father repeatedly sexually assaulted mother, including once while K.H. was in the same room. The court also issued a permanent restraining order requiring father to stay away from mother and K.H. except for monitored visits. Father appeals, challenging only the sufficiency of the evidence supporting the inclusion of K.H. in the restraining order. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 17, 2014, the Los Angeles County Department of Children and Family Services (DCFS) received a police referral alleging father tried to rape and sodomize mother. According to the detention report, their two-year-old daughter K.H. "was present in the home when the incidents occurred." (Italics omitted.)

When interviewed by DCFS, mother stated she and father had been having many relationship problems. On several occasions, she had asked him to leave the home they shared and each time he refused. On September 16, 2014, he was served with child custody and mediation paperwork and became very upset. Shortly after being served, he confronted mother, started touching her breasts, and lifted her shirt, exposing her breasts. She asked him to stop but he continued to fondle her breasts, began to pull her shorts and underwear down, and touched her vagina. In an effort to get away, she entered the room where K.H. was sleeping. Father followed her, pulled down her pants and underwear, exposed his penis, and attempted to separate her legs in an attempt to penetrate her vagina, all while K.H. was sleeping in the same room. He stopped when he heard mother's phone making noises. He then left the home.

After the incident, mother left K.H. with the maternal grandparents who lived in a house at the back of the same property where mother and father lived. She went to work and called the police to report the incident. The dispatcher told her there was nothing they could do because father lived in the home and advised her to obtain a restraining order. She went to the courthouse to obtain the restraining order but was

2

unable to complete the process because she did not have all of the requisite information.

When mother returned home that afternoon, father was upset, put K.H. in his car, and attempted to leave with her. Mother tried to talk to him but he locked the doors and ignored her. She called the police and stood behind the car to block him from leaving; after several minutes, he exited the car and allowed her to take K.H. into the home. A police officer eventually arrived and advised mother to obtain a restraining order.

Later that evening, father wanted to discuss the custody papers with mother. Mother feared he would become upset again, so she took K.H. to the maternal grandparents' house. When she returned, father asked why she was seeking sole custody. He began to touch her breasts and vagina and lifted her blouse and bra, exposing her breasts. He then grabbed her by the arms, pinned her down on the couch, pulled down her pants and underwear and began to touch her vagina. She asked him to stop several times and struggled against him. He exposed his penis and attempted to sodomize her but could not get an erection. He became frustrated, got up, and left the home to pick up K.H. from the maternal grandparents' home. Mother called the police and reported the attempted rape. The police came to the home and arrested father when he returned from the maternal grandparents' home.

As a result of the incident, mother received an emergency protective order on behalf of herself and K.H. On September 18, 2014, she filed for a permanent restraining order. The hearing on the permanent restraining order was scheduled for October 8, 2014, and a temporary restraining order was granted until that hearing naming mother and K.H. as protected persons.

During DCFS's initial investigation, mother said this incident was the only time father had ever forcibly attempted to have sex with her. She denied any history of domestic violence and denied father used drugs or alcohol. However, she intended to press charges and did not want father to return to the home or have any contact with K.H.

3

The maternal grandparents denied ever witnessing any domestic violence between mother and father; they claimed to never have seen father be aggressive toward anyone. Maternal grandmother also indicated she never had any concerns for the safety of mother or K.H. She said K.H. was well cared for by both parents.

On October 7, 2014, DCFS filed a petition pursuant to Welfare and Institutions Code section 300,[1] subdivisions (a) and (b) on behalf of K.H. The petition alleged K.H. was at risk of harm due to father's history of violent and assaultive behavior in the presence of K.H. In its detention report, DCFS found "the potential risk for further risk to the safety of the child . . . to be 'High'." DCFS recommended K.H. be detained in mother's home and father have monitored visits. At the detention hearing on October 7, 2014, the juvenile court found a prima facie showing for detention had been made as to father, detained K.H. from him, and released her to mother. Pursuant to mother's request, the juvenile court also issued another temporary restraining order protecting mother and K.H. from father and providing for supervised visitation between K.H. and father.

Father consistently visited with K.H. twice a week at the DCFS offices. K.H. appeared happy to see him and greeted him with a hug and kiss. The supervising children social worker (SCSW) observed healthy and appropriate interactions between them.

At the December 15, 2014 combined jurisdictional/dispositional hearing and hearing on the issuance of a permanent restraining order, the court sustained the petition, declared K.H. a dependent, and ordered K.H. removed from father's custody and placed with mother with family maintenance services and family reunification services to father. The court also issued a permanent restraining order protecting mother and K.H. from father through December 15, 2017, with a "carve out" for monitored visits for father.

---

[1] All statutory citations are to the Welfare and Institutions Code unless otherwise noted.

Father timely appealed, challenging only the juvenile court's inclusion of K.H. in the permanent restraining order.**2**

## DISCUSSION

Section 213.5, subdivision (a) provides in relevant part: "After a petition has been filed pursuant to Section 311 to declare a child a dependent child of the juvenile court, and until the time that the petition is dismissed or dependency is terminated, upon application in the manner provided by Section 527 of the Code of Civil Procedure or in the manner provided by Section 6300 of the Family Code, if related to domestic violence, the juvenile court has exclusive jurisdiction to issue ex parte orders (1) enjoining any person from molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, harassing, telephoning, including, but not limited to, making annoying telephone calls as described in Section 653m of the Penal Code, destroying the personal property, contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of the child or any other child in the household; and (2) excluding any person from the dwelling of the person who has care, custody, and control of the child. A court may also issue an ex parte order enjoining any person from molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, harassing, telephoning, including, but not limited to, making annoying telephone calls as described in Section 653m of the Penal Code, destroying the personal property, contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of any parent, legal guardian, or current caretaker of the child, regardless of whether the child resides with that parent, legal guardian, or current caretaker, upon application in the manner provided by Section 527 of the Code of Civil Procedure or, if related to domestic violence, in the manner provided by Section 6300 of the Family Code." Any

---

**2**     In the juvenile court DCFS took no position on mother's request for a restraining order and takes no position on father's appeal. Mother has filed a brief opposing father's request to remove K.H. from the restraining order.

order may remain in effect for up to three years unless otherwise terminated by the court. (§ 213.5, subd. (d)(1).)

The juvenile court may issue a restraining order pursuant to section 213.5 when the evidence shows the failure to do so "may jeopardize the safety of the petitioner." (*In re B.S.* (2009) 172 Cal.App.4th 183, 194 (*B.S.*).) An order need not rest on evidence of "a reasonable apprehension of future abuse" (*In re C.Q.* (2013) 219 Cal.App.4th 355, 363 (*C.Q.*)) or even on "evidence that the restrained person has previously molested, attacked, struck, sexually assaulted, stalked, or battered the child" (*B.S., supra*, at p. 193). A showing of prior violent conduct, however, is sufficient. (*Id.* at p. 194 [evidence of prior domestic violence].) We review the juvenile court's decision for substantial evidence, viewing the evidence "'in a light most favorable to the respondent, and indulg[ing] all legitimate and reasonable inferences to uphold the juvenile court's determination. If there is substantial evidence supporting the order, the court's issuance of the restraining order may not be disturbed.'" (*C.Q., supra*, at p. 364.)[3]

Substantial evidence supported the juvenile court's inclusion of K.H. in the restraining order. Although there was no evidence of prior instances of domestic violence or abusiveness by father, his conduct leading to the dependency petition in this case was frightening and outrageous. After being served with custody papers, he became so angry he sexually assaulted mother while their sleeping two-year-old daughter was in the same room. He later attempted to leave with K.H. and locked her in the car, refusing to allow mother access to her and forcing mother to use her body to physically block him from driving away. Later that same day, after again arguing about mother's request for custody, he sexually assaulted mother and attempted to

---

[3]    In *In re Brittany K.* (2005) 127 Cal.App.4th 1497, 1512, the court reviewed the juvenile court's factual findings for substantial evidence and reviewed the issuance of the restraining order for abuse of discretion. (See *C.Q., supra*, 219 Cal.App.4th at p. 364.) Even if we applied that combined standard here, we would find no abuse of discretion.

sodomize her.  The only reason K.H. was not present when this later assault occurred was because mother had taken her to the maternal grandparents' home, fearing father would become angry again.

This case is similar to *B.S.*, in which the father repeatedly committed domestic violence against the mother, during which father had little ability to control himself, tearing a door off its hinges and knocking a hole in a wall.  During the most recent incident, he was "'pushing and swinging wildly'" at the mother as they both "'stood over'" the child, and he ultimately grabbed the mother and "threw her down on top of" the child.  (*B.S., supra*, 172 Cal.App.4th at p. 194.)  From this evidence, it was "fairly inferable that the father threw the mother onto [the child] intentionally, even if he himself then fell accidentally," demonstrating willful disregard for the child's safety.  (*Ibid.*)

Here, although there was no evidence father intentionally sought to harm K.H., his assaults were just as egregious as the father's violent outbursts in *B.S.*, if not more so given their sexual nature.  And like the child in *B.S.*, K.H. was in harm's way—she was in the room during one of father's assaults on mother and father locked her in the car at one point to keep her from mother.  The only reason K.H. was not at risk from father's last assault was because mother had the foresight to remove her from the house before father arrived.  From this evidence the juvenile court reasonably concluded his increasingly violent actions might jeopardize K.H.'s physical safety.  As the court in *B.S.* stated in affirming the inclusion of the child in the protective order against father, "Even assuming an opposite inference might be equally reasonable, we are not authorized to second-guess the juvenile court on this point."  (*B.S., supra*, 172 Cal.App.4th at p. 194.)

Father relies on *C.Q.*, but it is distinguishable.  In that case, the court found insufficient evidence to include the children in the restraining order against the father after he had thrown boxes of glass figurines to the ground and punched the mother in the arm while the children were nearby.  Crying, their 12-year-old daughter stepped between them and asked the father not to hit the mother, at which point he left the

home. The daughter was not injured. (*C.Q., supra*, 219 Cal.App.4th at p. 358.) Father's sexual assaults here were far more serious than the father's conduct in *C.Q.* and placed K.H. at much more serious risk than the children in that case. And rather than deescalate his aggressive and sexually assaultive behavior against mother as the father did in *C.Q.*, father here continued his assaults on mother without regard for her or K.H.'s safety.

Thus, substantial evidence supported the juvenile court's inclusion of K.H. in the restraining order.

## DISPOSITION

The juvenile court's order is affirmed.


FLIER, J.

WE CONCUR:



BIGELOW, P. J.



GRIMES, J.

8