Filed 10/1/21  In re J.R. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re J.R. et al., Persons Coming Under the Juvenile Court Law. | B310600 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>S.R.,<br><br>Defendant and Appellant;<br><br>M.R.,<br><br>Defendant and Respondent. | (Los Angeles County Super. Ct. Nos. 20CCJP01351B-C) |

APPEAL from orders of the Superior Court of Los Angeles County, Debra R. Archuleta, Judge.  Affirmed.

No appearance for Plaintiff and Respondent.

Lori Siegel, under appointment by the Court of Appeal, for Defendant and Appellant S.R.

Paul A. Swiller, under appointment by the Court of Appeal, for Defendant and Respondent M.R.

\* \* \* \* \* \* \* \* \* \*

Mother S.R. appeals the juvenile court's dispositional order, placing the children, now four-year-old Selena R. and 10-year-old J.R., in mother's and father's custody, arguing father M.R. has an extensive and unresolved violent criminal history. Mother also challenges the order denying her request for a restraining order against father. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

This family came to the attention of the Los Angeles County Department of Children and Family Services (Department) in January 2020, after the Department received an emotional abuse referral following a domestic violence incident between mother and father.

Mother and father were no longer in a relationship. Father would spend most of his time working in Northern California, but would return to Los Angeles on weekends. The domestic violence incident occurred following a visit to Chuck E. Cheese by mother, Selena, and father. Father became angry with mother during their outing. As he was driving mother and Selena home, they argued, and father slapped mother. Mother reported the incident to police the following day.

According to mother, the children had never slept at father's home. She did not allow him to have unsupervised contact with the children because he abuses alcohol, and because he is a gang member and has been a target of gang violence. He was stabbed in November 2017, and his car has been "shot up." He drinks excessively (several months earlier he drank an entire 24-pack of beer in a matter of hours), and becomes violent when he drinks. However, she did not believe father would knowingly harm the children.

Mother and father have an extensive domestic violence history. Before the referral incident, the last incident of domestic

violence was in November 2019, when father slapped mother and pulled her hair. She bit his ribcage to get away from him. He had also "tried to kill her" five years earlier, when he caught her moving her belongings out of their shared home, punching her several times and slamming her face into the ground. This incident occurred in front of J.R. and his older half sibling, R.A. (who is not at issue in this appeal). The police report noted that mother had a black eye, bruises, and abrasions on her neck.

Mother has no criminal history. Father is a documented gang member with an extensive criminal history. He served two prison terms, one for a 2010 offense of felony false imprisonment and assault with a deadly weapon (mother was the victim), and another for a 2014 assault with a deadly weapon. He had also been convicted of manufacturing a dangerous weapon, prostitution, and vandalism. He had been arrested at least 18 times between 2001 and 2019, for a wide range of offenses, including assault with a deadly weapon, battery, negligent discharge of a firearm, possession of an assault weapon, and battery on a spouse. Call logs for mother's home showed that mother had made two calls to report domestic violence in January and July 2019, but that responding officers were unable to gain access to mother's home.

Mother obtained a temporary restraining order from police following the referral incident, but it had expired. She planned to seek a restraining order against father. According to police, no charges were filed by the city attorney due to lack of evidence.

Police provided the Department with several police reports of domestic violence between mother and father, between 2010 and 2014. According to the police report detailing the 2010 incident, father kidnapped and raped mother. The police report noted that other women made similar reports of domestic violence, kidnapping, and sexual assault by father.

3

Father's probation officer reported that father was complying with the terms of his probation. He "has shown a great amount of maturity . . . and . . . is really trying to do well." Father's probation did not require him to drug test or complete any programs. Father's probation officer had observed mother and father together and they appeared to be happy. They had lived together as recently as December 2019, but father moved out in January 2020, after father alleged mother verbally and physically abused him. Father showed his probation officer a video of mother attacking him. Father works during the week in San Jose, and stays in Los Angeles on weekends with paternal grandmother.

Father denied ever hitting mother. Concerning the 2010 incident with mother, father told the Department he entered a plea because he was worried about going to prison. He also claimed mother was the aggressor in a 2013 incident where he was arrested. He showed the social worker a 2017 video depicting mother punching him and demanding money. He did not report the incident because he did not want mother to get in trouble.

Father admitted he used to be a member of the 80th Street gang, but claimed he was no longer an active member. He avoids Watts and Compton because he could be a target in those areas. He was a victim of robbery and was shot in the head when he was 21. He was also stabbed in the stomach in 2017. Father denied any mental health or substance abuse issues. He completed anger management and domestic violence counseling while he was in prison.

Father is employed as a safety engineer for a construction company. His employer reported that he is a dedicated and valuable team member. He pays child support to mother.

On February 27, 2020, father tested negative for all substances.

At the March 9, 2020 detention hearing, the children were permitted to stay with mother, and monitored visitation was ordered for father. The juvenile court issued a temporary restraining order protecting mother from father. The temporary restraining order was extended a number of times because the hearing on the restraining order had to be continued due to the COVID-19 emergency.

The Department's April 2020 jurisdiction/disposition report stated that father had not had any visits with the children. He also had not participated in drug testing because the Department was unable to contact him to set up testing.

According to the Department's September 2020 interim review report, mother told the Department that in May or July father's girlfriend sent her a photo of the girlfriend and father, and that father had a gun in his pocket in the photo. However, there had been no other contact with father or the girlfriend since then, and "everything is good."

Father only had two visits with the children after the April report. At a July 2020 visit, maternal grandmother allowed father to have unsupervised time with J.R., and mother was very upset. Father also had a FaceTime visit with the children in June 2020. However, he had not been in contact with the Department to schedule any further in person visits.

At the September 14, 2020 status hearing, father told the court he needed help facilitating visitation, as he was not allowed to contact mother because of the restraining order, and because he was unable to reach maternal grandmother to schedule visits. The court ordered the Department to help facilitate father's visits and to establish a written visitation schedule.

On September 15, 2020, the Department provided father with a written visitation schedule, providing for visitation on Fridays.

5

However, father needed weekend visitation because of his work schedule. Mother was very upset that father wanted to visit with the children, telling the social worker father has never visited the children consistently, and that it hurts their feelings. She also claimed that weekend visitation would not work with her schedule.

At an October 23, 2020 hearing, the court cautioned mother that she needed to accommodate father's work schedule so that he could visit the children. Mother told the court she is out of town with the children, working on weekends. She leaves for San Diego on Friday night and returns on Monday. The court ordered the Department to work with mother and father to facilitate visitation.

According to the Department's January 2021 interim review report, father told the Department mother violated the restraining order in September 2020 when she showed up at his girlfriend's home. She threatened to "f*** that b**** up." After father warned her she was in violation of the restraining order, she left. Mother had also made fake Instagram accounts to harass and threaten father's girlfriend. She stopped after father told his attorney about it. He was also concerned because he had only a few visits with the children.

Mother admitted she went to father's girlfriend's house, and that it was a mistake. She claimed that father's girlfriend was sending "nasty messages" to her, but that it had been several months since mother and the girlfriend communicated. According to father's girlfriend, mother was the one harassing her, and sending threatening messages.

Neither mother nor father were participating in any programs. The Department provided father with a referral for drug testing in *Los Angeles*, despite knowing he worked in San Jose during the week. Father was a no show for 26 tests between May and December 2020. He tested negative in October. The testing

6

times were all during the week, when father was working in San Jose.

The family continued to have problems with visitation. Mother's monitor sometimes cancelled visits because she was sick or unavailable. Consequently, father only saw the children a couple times in November 2020. The monitor reported that father ignored J.R. during visits, paying more attention to Selena. He also cried in front of the children, which made them uncomfortable. Mother insisted that father not be allowed to hug the children during visits because of the COVID-19 emergency, even though father tested negative.

At the January 28, 2021 adjudication hearing, the court sustained allegations based on mother's and father's domestic violence history. Father's counsel asked that the children be released to father, in a "50/50 [custody] situation." The children's counsel argued that the children did not want to visit with father. The court ordered the children released to father, and that mother and father equally share custody of the children under the supervision of the Department, with family maintenance services.

The court stated: "I don't like this case. I don't like the actions of the parents, and I am really not happy with the mother because I believe she has deflected these children away from their father and has poisoned these children and turned his children against him. So over everyone's objection, I'm going to order these children be released to both mother and father, as I do not believe by clear and convincing evidence based on the state of the record and the reports that this court has read that there's sufficient evidence to remove these children from father." The Department was to assess father's home prior to release to father.

The court also denied mother's request for a restraining order, finding there was no current risk to mother, and ordered the parties to have peaceful contact. Mother timely appealed.

## DISCUSSION

### 1.    Standing and Mootness

Father argues mother lacks standing to challenge the court's placement order, reasoning she was not aggrieved by the order. We are not persuaded. As the children's custodial parent, mother maintains "a fundamental interest in . . . companionship, custody, management and care" of the children, sufficient to give her standing to challenge the juvenile court's placement order. (*In re H.G.* (2006) 146 Cal.App.4th 1, 9.)

While mother's appeal was pending, the court issued a custody order providing that father would have the children on alternating Wednesdays and weekends. We sent a Government Code section 68081 letter to the parties, asking what impact, if any, this subsequent order had on mother's appeal. Father urges the appeal is moot, while mother maintains it is not because father still has unmonitored contact with the children, even if he has less custodial time than envisioned in the appealed order. We agree with mother.

### 2.    Placement Order

Mother argues the juvenile court's placement order releasing the children to father's custody was an abuse of discretion, reasoning that she was the custodial parent, father's visitation with the children was inconsistent and of poor quality, and he has an unresolved history of violence.

The juvenile court has broad authority to make "any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the [dependent] child." (Welf. & Inst. Code, § 362, subd. (a).) The court "has broad discretion to

8

determine what would best serve and protect the child's interest . . . ." (*In re Corrine W.* (2009) 45 Cal.4th 522, 532.) We review custody determinations for abuse of discretion. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.) Custody rulings are not disturbed unless they are arbitrary, capricious, or patently absurd. (*Id.* at p. 319.) " ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' [Citation.]" (*Id.* at pp. 319-320.) There is no abuse of discretion where substantial evidence supports the order. (*In re Daniel C. H.* (1990) 220 Cal.App.3d 814, 839.)

" '[W]here the issue on appeal turns on a failure of proof . . . , the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. . . . Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*Los Angeles County Dept. of Children & Family Services v. Superior Court* (2013) 215 Cal.App.4th 962, 967, citation omitted.)

The trial court found there was insufficient evidence to support an order removing the children from their father. He has an extensive criminal history and is a former gang member, and while these facts are highly relevant in considering father's ability to care for his children, these facts may not be considered in isolation. Father paid his debt to society for his crimes, and while in prison, he completed anger management and domestic violence counseling. His behavior toward mother since his release from prison suggests he gained insight from that counseling. He has steady employment as a safety engineer with a construction

9

company, and he pays child support.  His visitation with the children before the court made its disposition orders had been infrequent but that was partly due to his out-of-town employment and partly due to mother having interfered with and frustrated his visitation and ability to parent his children.  There is no evidence father mistreated the children.  Therefore, we can discern no abuse of discretion in the court's placement order.

**3.      Restraining Order**

Under Welfare and Institutions Code section 213.5, subdivision (a), the juvenile court may issue an order "enjoining any person from molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, harassing, telephoning, including, but not limited to, making annoying telephone calls as described in Section 653m of the Penal Code, destroying the personal property, contacting, . . . or disturbing the peace of any parent . . . ."  (§ 213.5, subd. (a).)  A protective order is warranted if the " 'failure to make [the order] may jeopardize the safety of the petitioner . . . .' "  (*In re B.S.* (2009) 172 Cal.App.4th 183, 194.)  We review the denial of a request for a restraining order for an abuse of discretion.  (*S.M. v. E.P.* (2010) 184 Cal.App.4th 1249, 1264-1265.)

We find no abuse of discretion here.  The court could reasonably conclude there was no future risk to mother, given father's compliance with the temporary restraining order, lack of incidents during the pendency of the case, and that mother and father were no longer involved in a romantic relationship.

**DISPOSITION**

The orders are affirmed.

GRIMES, Acting P. J.

WE CONCUR:

STRATTON, J.                    WILEY, J.

10