Filed 8/31/22  In re Josiah J. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Josiah J., a Person Coming Under the Juvenile Court Law. | |
| SOLANO COUNTY HEALTH & SOCIAL SERVICES DEPARTMENT, Plaintiff and Respondent, v. D.H., Defendant and Appellant. | A163796 (Solano County Super. Ct. No. J43394) |

**MEMORANDUM OPINION**[1]

Josiah J. is a 12-year-old boy who lives with his mother (Mother) and an older sibling and has four-hour visits twice a month with his father (Father).  Pursuant to custody orders entered under Welfare & Institutions Code section 364 (all undesignated statutory references are to this code), Father's visits are supervised by Father's wife.  From the decision not to

---

[1]  We resolve this case by a memorandum opinion pursuant to California Standards of Judicial Administration, section 8.1.  (See also *People v. Garcia* (2002) 97 Cal.App.4th 847, 853–855.)

require that these visits be professionally supervised, Mother has timely appealed. We affirm.

## BACKGROUND

In July 2016, the juvenile court sustained jurisdictional allegations as to Josiah under section 300, subdivision (b) as follows: that Mother maintained a loaded firearm in the residence where it was accessible to her children; that she was involved in an altercation with law enforcement in front of the children, and while using a firearm in an unsafe manner; that Mother was suffering from depression and alcohol abuse; and that Father had committed domestic violence. Josiah and two older siblings were placed with relatives for a period of years, but in January 2021 he returned to Mother's home. By September 2021 the court convened a family maintenance review hearing under section 364.

In the reporting period leading up to this hearing, Father had had hour-long visits supervised by the Solano County Health & Social Services Department (Department). At the hearing, the recommendation of the Department was that Father's visits remain supervised. Father contested this aspect of the recommendation, so the matter was continued to October 4, 2021.

The juvenile court heard testimony at the October 4 hearing that Father previously had a criminal case involving Mother, in which he was convicted and placed on probation and did not successfully complete his probationary terms. The court also had a copy of Mother's August 5, 2021 request for a restraining order against Father, in which Mother alleged two incidents of domestic violence against her, both in Josiah's presence. Specifically, she stated that on a June 24, 2021 phone call with Josiah, Father had threatened to kill her because he was "tired of" her. And she

2

related that Father's criminal conviction arose from an incident in which, although she had a restraining order against him, Father came to her place of business and beat her up in the presence of her children and customers.

The social worker testified that Father had been offered family reunification services but did not complete his case plan. He had declined to provide documentation regarding anger management, parenting education, and domestic violence classes. And in talking with the social worker he often grew frustrated, demonstrated his anger, and terminated their conversations. For these reasons, the Department recommended Father's visits remain supervised.

At the hearing, Father suggested as an alternative that his visits be supervised by his wife, Lakisha. The Department had had no opportunity to vet Lakisha, but the juvenile court did learn that she had a criminal record and had once been incarcerated for fraud. Lakisha testified as to her plan for supervising visits, including that if Father acted inappropriately she would talk to him or, if the conduct was "too bad," she would stop the visit by leaving with Josiah. She admitted this might be awkward, given that Father was her husband. Father also testified at the hearing, explaining that he had three other children and six grandchildren and had unsupervised visits with all of them.

At the conclusion of the hearing, the juvenile court found that the conditions justifying the initial assumption of jurisdiction no longer prevailed, and it gave full legal and physical custody of Josiah to Mother, with twice monthly visits to Father. The Department, Mother, and Josiah's attorney all requested that Father's visits be professionally supervised, but the juvenile court decided otherwise. It ordered four-hour visits, monitored only by Lakisha, with exchanges to occur at the police department. The

court's findings in support of this order included that: "Josiah very much wants to have visitation with his Father"; "there's no evidence here that Josiah's safety is in danger in any way in being with" Father; rather, the safety risk is when his parents are together, which will not occur with this visitation plan; but "supervision is necessary because [Father] has not completed the domestic violence treatment program and anger management training or a parenting class."

## DISCUSSION

When a juvenile court terminates jurisdiction over a dependent child, it may make "exit orders" regarding custody and visitation. (*In re T.H.* (2010) 190 Cal.App.4th 1119, 1122; § 364, subd. (c); § 362.4.) Such orders remain in effect until a family court finds there has been a significant change of circumstances and modifies or terminates them. (*In re T.H.*, at pp. 1122–1123; § 302, subd. (d).) We review the juvenile court's order for substantial evidence. (*In re J.F.* (2014) 228 Cal.App.4th 202, 209.) The question is whether a reasonable trier of fact could make the challenged ruling considering the whole record. (*In re I.C.* (2018) 4 Cal.5th 869, 892.) We may "neither reweigh the evidence nor exercise our independent judgment." (*In re Yolanda L.* (2017) 7 Cal.App.5th 987, 992.)

On appeal, both Mother and the Department urge us to conclude the juvenile court's exit orders fail to provide for Josiah's protection. They essentially reargue the evidence, emphasizing that Father has untreated domestic violence and anger management issues. They cite case law for the proposition that a juvenile court " 'could reasonably infer, from the father's tendency to resort to violence as well as from his evident lack of impulse control, that he might be a threat to [the children's] safety . . . even in the mother's absence." (*In re Bruno M.* (2018) 28 Cal.App.5th 990, 998, quoting

4

*In re B.S.* (2009) 172 Cal.App.4th 183, 194.) What they ignore is the important principle their authority recites in the very next sentence: " 'Even assuming an opposite inference might be equally reasonable, we are not authorized to second-guess the juvenile court on this point.' " (*In re Bruno M.,* at p. 998, quoting *In re B.S.,* at p. 194.)

This court takes seriously a parent's domestic violence and the threat it poses to children, but we conclude substantial evidence supports the decision the juvenile court made here. The custody and visitation orders require exchanges to occur at a police department. The orders require another adult, albeit one who is not a neutral and professional supervisor, to monitor the visits. Although there is evidence Father told Josiah he would kill Mother, there is no evidence Father has ever been violent with or threatened Josiah. And the orders are subject to modification if there is any significant change in these circumstances. (*In re T.H.*, *supra*, 190 Cal.App.4th at pp. 1122–1124.)

## DISPOSITION

The juvenile court's order of October 4, 2021 is affirmed.

TUCHER, P.J.

WE CONCUR:

PETROU, J.
RODRÍGUEZ, J.

*In re Josiah J.* (A163796)