Filed 5/8/25  In re G.W. CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re G.W. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E084419 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J295796-98) |
| v. | OPINION |
| J.M., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Lynn M. Poncin, Judge.  Affirmed.

Paul A. Swiller, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, and Joseph R. Barrell, Deputy County Counsel for Plaintiff and Respondent.

1

In this dependency action, the juvenile court issued a three-year restraining order prohibiting the children's mother from contacting the children or their caregiver. Mother contends the restraining order lacked substantial evidence and that the trial court abused its discretion in granting it. We affirm.[1]

## I. BACKGROUND

In January 2023, law enforcement found defendant and appellant J.M. (mother) and her three children living in a motor home in a parking lot. Mother "smelled of alcohol and marijuana," was "refusing to cooperate," and made claims that "no one is taking her children and she will do whatever she has to do to keep them." Mother then "put all the children on one stroller and attempted to run off with them." Law enforcement attempted to handcuff mother, but mother grabbed one of the children from the stroller and "attempted to use her as a shield as the mother was resisting arrest." Law enforcement recovered a small pocket knife from mother after arresting her.

Plaintiff and respondent San Bernardino County Children and Family Services (CFS) filed section 300 petitions for the children, E.W. (born 2017), S.W. (born 2020), and G.W. (born 2021). The children were detained and removed from the parents.[2]

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

[2] At the time the petitions were filed, CFS did not know the identity or location of the children's father. Two months later, the father was located and told CFS that he was living in Texas, where mother and the children also had been living until January 2022. He appeared in person at the combined jurisdiction and disposition hearing and stated he intended to stay in California. The father is not a party to this appeal.

According to CFS's jurisdiction and disposition report, one day in February 2023, mother appeared at the juvenile court, erroneously believing there to be a hearing that day. She was "visibly angry with her hands in the pockets of an oversized hoodie," asked whether there were metal detectors, then walked back to the parking lot. After returning a short time later and learning that there was no hearing scheduled for that day, mother became "irate" and "mumbled what sounded like threats of either 'I'll show you' or 'I'll get you.'" She then stated "'fine I'll come back with the news' and shouted 'have you stripped down to nothing'" before walking away. At the combined jurisdiction and disposition hearing in June 2023, the juvenile court found several of the petition's allegations to be true and declared the children dependents of the court.

In its March 2024 12-month permanency review report, CFS said it learned Mother planned to kidnap the children and take them to Texas.[3] Minors' counsel requested a juvenile restraining order prohibiting mother from contacting the children and

_____

[3] It is not clear whether mother informed CFS of her plans directly or whether CFS learned about mother's plans from someone else. CFS's 12 month permanency status report states: "CFS received a referral, RP reported safety concerns for children . . . . Today (12/20/2023) during an interview, mother . . . disclosed that she has an active plan to go to the children's placement, 'kidnap' them and flee with them to Texas. It is unknown if mother knows the address to [the children's] current confidential placement. RP expressed concerns because parents can 'find anything out' and would not be surprised if mother did know the address to where [the children] are currently placed. [¶] Per RP, mother is extremely mentally ill, is volatile, and has a notion that she does not want to see [the children] unless they are placed back in her custody. This means that mother does not currently have visitation with [the children]. RP is concerned that mother is going to follow through with her plan as she was very detailed." CFS's respondent's brief implies that RP stands for "reporting party."

their caregiver. The request stated: "Mother . . . has disclosed that she has an active plan to go to the minors' placement, kidnap the minors, and flee with them to Texas. The minors' current caregiver believes the Mother has her address as the parents have followed the current caregiver and her adult daughter on multiple occasions. [E.W.] has disclosed that she has seen her parent's van at the park while she and her sisters are there playing. [E.W.] has provided that she has seen her parents at her school. [E.W.] also told her current caregiver that her Mother had a gun in the past and that she had seen the Mother fire it." The trial court issued a temporary retraining order and set a hearing.

Several months passed between the issuance of the temporary restraining order and the hearing, in part because counsel could not locate and serve Mother. In the meantime, at the 12-month permanency review hearing in March 2024, the juvenile court ordered there to be "no visitation between the mother and the children based on the statements of the mother that she would kidnap the children and take them to Texas."

The restraining order hearing took place in July 2024. Mother's counsel argued that the allegations were "basically based on hearsay." "There's no who, when, where, why, how? Just a generalization that Mom threatened. Who is the accuser? When did this happen? We have no idea." Counsel then argued that "[t]he circumstantial evidence is basically based on vague assertions." CFS and the minors' counsel argued for the restraining order. The juvenile court found clear and convincing evidence supported a restraining order. It stated that the identity of the person who reported mother had a plan to kidnap the children remained anonymous by law. It also noted the children's caregiver

4

believed mother had her address because she and her adult daughter reported seeing both parents follow them on multiple occasions. Additionally, it noted E.W.'s reports of seeing her parents at her school, seeing their van at the park, and seeing Mother use a gun.

As the juvenile court was making its ruling from the bench, Mother's counsel informed the court that Mother now wished to testify. Over objections, the juvenile court allowed Mother to do so. During her testimony, Mother denied the allegations, including that she had plans to kidnap the children, knew where the caregiver lived, or ever owned a firearm. The court kept its original ruling, stating it "is finding the information contained in the reports to be more credible" than Mother's denials. The three-year restraining order prohibited Mother from, among other things, contacting, stalking, disturbing the peace of, following, or coming within 500 yards of the children or the caregiver.

## II. DISCUSSION

"Section 213.5 governs the issuance of restraining orders by the juvenile court." (*In re S.G.* (2021) 71 Cal.App.5th 654, 670.) After a hearing, a juvenile court may issue a restraining order for up to three years enjoining a person from, among other things, threatening, contacting, stalking, coming within a certain distance of, or disturbing the peace of a child or caretaker. (§ 213.5, subds. (a), (d)(1).)

A section 213.5 restraining order does not *require* evidence that the restrained person previously committed the enjoined actions against the protected person, nor that

5

there be reasonable apprehension of future abuse. (*In re C.Q.* (2013) 219 Cal.App.4th 355, 363.) Rather, it permits a restraining order if "'"failure to make [the order] may jeopardize the safety of the petitioner."'" (*Id.* at p. 364.) However, "evidence that the restrained person has previously" committed the enjoined actions against the protected person "is certainly sufficient." (*In re B.S.* (2009) 172 Cal.App.4th 183, 193.)

For the restraining order, "[p]roof may be by the application and any attachments, additional declarations or documentary evidence, the contents of the juvenile court file, testimony, or any combination of these." (Cal. Rules of Court, rule 5.630(e)(1).) This includes hearsay evidence. (*In re L.W.* (2020) 44 Cal.App.5th 44, 48, fn. 3.) Because section 213.5 does not describe the burden of proof necessary for a restraining order, only a preponderance of the evidence is required. (Evid. Code, § 115 ["Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence"].)

"'[A]ppellate courts apply the substantial evidence standard to determine whether sufficient facts supported the factual findings in support of a [section 213.5] restraining order and the abuse of discretion standard to determine whether the court properly issued the order.' [Citation.] When an appellant challenges 'the sufficiency of the evidence, . . . [i]f there is substantial evidence supporting the order, the court's issuance of the restraining order may not be disturbed.'" (*In re S.G.*, *supra*, 71 Cal.App.5th at pp. 670-671.) This means we "'view the evidence in a light most favorable to the respondent, and indulge all legitimate and reasonable inferences to uphold the juvenile court's

6

determination.'" (*In re C.Q.*, *supra*, 219 Cal.App.4th at p. 364.)  "Substantial evidence is evidence that is 'of ponderable legal significance,' 'reasonable in nature, credible, and of solid value,' and '"substantial" proof of the essentials which the law requires in a particular case.'" (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1006.)  "In reviewing the sufficiency of the evidence on appeal, we look to the entire record for substantial evidence to support the findings of the juvenile court.  We do not pass on the credibility of witnesses, attempt to resolve conflicts in the evidence, or determine where the weight of the evidence lies." (*In re A.M.* (2010) 187 Cal.App.4th 1380, 1387-1388.)

Mother argues the restraining order lacked substantial evidence because it was based on vague allegations that lacked additional evidentiary support.  Mother argues, for example, that the children's caretaker never stated precisely when the parents allegedly followed her or to whom E.W. stated she has seen Mother fire a gun.  Mother does not contend that any of the allegations contained in the restraining order request were improperly considered or admitted, but that additional, specific evidence was needed.

We disagree.  In reviewing for sufficiency of the evidence, "the focus is on the quality, not the quantity of the evidence.  Very little solid evidence may be 'substantial,' while a lot of extremely weak evidence might be 'insubstantial.'" (*Toyota Motor Sales U.S.A., Inc. v. Superior Court* (1990) 220 Cal.App.3d 864, 871.)  As mentioned, no one here argues that the statements concerning mother's plans—whether as stated in CFS's 12-month review report or as stated in the restraining order request—were improperly considered as evidence.  The statements are evidence that mother planned to kidnap the

7

children, which would disturb the peace of the children and their caretaker. (See *In re Bruno M.* (2018) 28 Cal.App.5th 990, 997 ["In this context, *disturbing the peace* means "'conduct that destroys the mental or emotional calm of the other party'""].) The statements also provided evidence that mother followed the children and their caretaker in a park. Particularly in light of previous reports of mother attempting to run off with the children in a parking lot and making threats at the courthouse, the statements that mother followed and planned to kidnap the children were reasonable and credible. (See *Conservatorship of O.B.*, *supra*, 9 Cal.5th at p. 1006.) Although additional details about the statements, such as when they were made and to whom, may have made them easier to verify or refute, the absence of such details does not render evidence insubstantial. Mother's arguments essentially challenge the weight of the evidence, and appellate courts do not reweigh the evidence when conducting a substantial evidence review. (See *In re A.M.*, *supra*, 187 Cal.App.4th at pp. 1387-1388.)

Mother separately contends that the juvenile court abused its discretion in issuing the restraining order. That argument is also premised, however, on mother's claim that "vague and non-specific allegations" did not justify the order, so we reject the argument for largely the same reasons explained above. "'""The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court."'" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.) The inferences necessary to justify the restraining order here are

8

reasonably deduced from the evidence, even if other inferences were possible.  In sum, we find no error in the section 213.5 restraining order.

## III.  DISPOSITION

The restraining order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL

J.

We concur:

McKINSTER

Acting P. J.

CODRINGTON

J.