[No. C063602. Third Dist. Aug. 20, 2010.]

In re V.V. et al., Persons Coming Under the Juvenile Court Law.
SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN
SERVICES, Plaintiff and Respondent, v.
V.G. et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts I. and II. of the Discussion.

COUNSEL

Carolyn S. Hurley, under appointment by the Court of Appeal, for Defendant and Appellant V.G.

Elaine Forrester, under appointment by the Court of Appeal, for Defendant and Appellant J.V.

Robert A. Ryan, Jr., County Counsel, and Lilly C. Frawley, Deputy County Counsel, for Plaintiff and Respondent.

OPINION

**CANTIL-SAKAUYE, J.**—Appellants V.G. (mother) and J.V. (father) appeal from the juvenile court's orders terminating their parental rights as to the two children, V.V. (born Jan. 2005) and Va.V. (born Aug. 2008). (Welf. & Inst. Code, §§ 395, 366.26.)[1] The mother contends she was not notified of the section 388 hearing where her reunification services were terminated, and the juvenile court should have applied the parent-child and sibling bond exceptions to adoption. The father contends the juvenile court erred by preventing him from discharging retained counsel. We shall affirm the juvenile court's orders.

## FACTS AND PROCEDURE

In February 2008, the Sacramento County Department of Health and Human Services (DHHS) filed a nondetained dependency petition pursuant to

---

[1] Hereafter, undesignated statutory references are to the Welfare and Institutions Code.

section 300, subdivision (b), alleging violence, the mother's history of substance abuse, and positive tests for marijuana and methamphetamine in October 2007.

According to a March 2008 report, the mother had moved in with L.H. and C.H., whom she considered her parents. The mother initially denied using drugs, but later admitted using marijuana and methamphetamine. She used methamphetamine together with the father; the mother believed V.V. would not be safe with him because the father gets a lot of traffic day and night from selling drugs. Regarding domestic violence, the mother stated, "He's [(the father)] kicked me, threw a Gatorade bottle at my head, put his arms around my throat, and bit me. He's done those things around [V.V.]."

The father denied the drug and domestic violence allegations. He refused to test for drugs, or sign the family maintenance plan.

The mother tested positive for methamphetamine in February 2008. She admitted using methamphetamine since she was 16 or 17 years old, and smoking the drug three to four times a week.

The original petition was superseded by an amended petition (§ 300) filed in March 2008, which added domestic violence allegations.

An April 2008 report related the mother was compliant with her drug testing and treatment program. The father had been charged with six felony drug offenses after he was found in possession of methamphetamine, cocaine, heroin, and a digital scale. He refused to sign a release for an alcohol and drug assessment; the father first wanted to talk to his criminal attorney because he did not want to incriminate himself.

In April 2008, the father waived services, and the mother waived her rights and submitted on the petition. The juvenile court sustained the petition, ordered services for the mother, and continued placement with her. DHHS later amended the petition to include the father's arrest on felony drug charges.

In July 2008, DHHS filed a supplemental petition (§ 387) alleging the mother used methamphetamine in V.V.'s presence and tested positive for methamphetamine in July 2008, when she was eight months pregnant. V.V. was placed with C.H. and L.H.

V.V. was not adjusting well to her placement, and frequently cried for her mother. C.H. and L.H. were unwilling to provide long-term care for her.

The mother gave birth to Va.V. in August 2008, and both tested negative for drugs at delivery. The baby was put into protective custody the following day, and DHHS filed a dependency petition for the minor pursuant to section 300, subdivisions (b) and (j). The children were placed together in a confidential foster home.

The March 2009 permanency report stated the children were doing well in their current foster placement. The father still refused to participate in services because he believed it would be an admission of criminal activity. The mother tested positive for methamphetamine in September and October 2008. In February 2009, she tested positive for methamphetamine and was discharged from treatment. The mother tested presumptive positive for marijuana two times in March 2009.

The juvenile court terminated services for the father in April 2009. DHHS filed a petition for modification (§ 388) in May 2009, seeking termination of the mother's services. The juvenile court granted the petition in June 2009, and set a termination hearing (§ 366.26).

A social worker found the parents' visits with the children were consistent and regular. Va.V. was not fazed by the visits and showed little excitement when they began or distress when they ended.

V.V. looked forward to visits, and considered the mother and father to be her parents. On a visit in October 2009, V.V. was told she would not be going home because she would be going to a new house with grownup parents. She was quiet during the visit, apparently taking in the information. She was tearful on the ride home, and told the foster parent she "was not going home to her mommy and daddy, because they were not grownup."

The children have an eight-year-old half brother, J.V., who is the father's son. V.V. was happy that her prospective adoptive family had a boy close to her brother's age. She regularly visited J.V., and was excited to go fishing with her new big brother in the prospective adoptive family.

V.V. was interested in finding out about the prospective adoptive family. She was particularly excited that they had a large house, she could go to preschool, the family liked Disney, and they would take her fishing. If she could have a princess bed and an Ariel doll, V.V. would move to the new family right away.

Following a contested hearing, the juvenile court terminated rights with a permanent plan of adoption.

# DISCUSSION

## I., II.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III.

### There Was No Violation of the Father's Right to Discharge Retained Counsel

The father's sole contention on appeal is that the juvenile court erred in denying his request to discharge retained counsel.

### A

The father was represented in the dependency action by Evelyn Cox as retained counsel. On November 6, 2009, the first day of the contested section 366.26 hearing, Cox informed the court that the father had concerns about her continuing as his counsel; the father had executed a substitution of attorney form and was interested in hiring Paul Phillips as his new counsel. The juvenile court indicated there were two issues—a potential *Marsden*[4] motion, and a "substitution of attorney." The court asked Cox if she wanted to deal with both or just one of the issues. Cox wanted to address both, as the father had raised "a pretty serious issue" with her, which she would like placed on the record.

The juvenile court held a *Marsden* hearing, and concluded there was not an irreparable breakdown in the attorney-client relationship. It addressed some of the father's concerns about placement, and denied the *Marsden* motion.

Following the *Marsden* hearing, the juvenile court asked Phillips whether he was ready to represent the father. Phillips estimated a three-week continuance would be adequate. He had 20 years' civil and criminal trial work, but no experience in dependency cases.

Counsel for the mother informed the juvenile court the mother would not make the hearing due to her apparent illness, and joined the father's request for a continuance. The juvenile court indicated it would grant no longer than a 10-day continuance; it declined to relieve Cox until Phillips was prepared to go forward.

---

*See footnote, *ante*, page 392.

[4] *People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44] (*Marsden*).

The juvenile court proposed a continuance to November 24 or 25. Upon learning the social worker would be unavailable on those dates, the juvenile court continued the hearing to November 10, 2009. Phillips attended the November 10 hearing "as an observer to learn." Cox represented the father for the remainder of the dependency proceedings.

## B

The father claimed the juvenile court erred in applying *Marsden* to retained counsel, and its refusal to grant a continuance was an abuse of discretion.

■ In a criminal case, when a defendant requests substitute appointed counsel, the trial court must permit the defendant to explain the specific reasons why the defendant believes current appointed counsel is not adequately representing him. (*Marsden, supra,* 2 Cal.3d at pp. 123–124.) Juvenile courts, relying on the *Marsden* model, have permitted the parents, who have a statutory and a due process right to competent counsel, to air their complaints about appointed counsel and request new counsel be appointed. (§ 317.5; *In re James S.* (1991) 227 Cal.App.3d 930, 935, fn. 13 [278 Cal.Rptr. 295].)

The father correctly notes that the *Marsden* procedure did not apply to his attempt to discharge Cox because she was retained counsel. The procedure specified by *Marsden* for discharging appointed counsel and appointing new counsel for an indigent defendant is inapplicable to retained counsel. (*People v. Ortiz* (1990) 51 Cal.3d 975, 986 [275 Cal.Rptr. 191, 800 P.2d 547].) This is so because "[t]he right of a nonindigent criminal defendant to discharge his retained attorney, with or without cause, has long been recognized in this state [citations]." (*Id.* at p. 983.)

We see no reason to fashion a different rule for dependency cases. The *Marsden* procedure applies to a parent's request to discharge only appointed counsel, and it was error for the juvenile court to hold a *Marsden* hearing. However, the error was harmless beyond a reasonable doubt because the juvenile court separately addressed the father's request to discharge retained counsel and substitute another retained counsel of his choosing.

The juvenile court was not, as the father contends, unwilling to allow him to discharge Cox and retain Phillips as substitute counsel. The court would have allowed the father to proceed with Phillips if Phillips had been ready to go forward. Phillips was not ready, and the juvenile court refused to continue the case to give him time to prepare. The appropriate question to ask is whether the juvenile court erred in refusing to grant the continuance.

■ In criminal cases, "[a] nonindigent defendant's right to discharge his retained counsel, however, is not absolute. The trial court, in its discretion, may deny such a motion if discharge will result in 'significant prejudice' to the defendant [citation], or if it is not timely, i.e., if it will result in 'disruption of the orderly processes of justice' [citations]." (*People v. Ortiz, supra,* 51 Cal.3d at p. 983.)

This does not reflect the balance of interests in dependency cases. The focus of dependency law is "on the preservation of the family as well as the safety, protection, and physical and emotional well-being of the child." (§ 300.2.) The children's interests are of paramount consideration once reunification services have been terminated. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317 [27 Cal.Rptr.2d 595, 867 P.2d 706].) Accordingly, "[t]he rights and protections afforded parents in a dependency proceeding are not the same as those afforded to the accused in a criminal proceeding." (*In re James F.* (2008) 42 Cal.4th 901, 915 [70 Cal.Rptr.3d 358, 174 P.3d 180].)

■ Pursuant to section 352, the juvenile court may for good cause order a continuance of a dependency hearing. " 'Section 352 mandates that before the court can grant a continuance it must "give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements." ' " (*In re Elizabeth R.* (1995) 35 Cal.App.4th 1774, 1798 [42 Cal.Rptr.2d 200].)

The juvenile court has broad discretion in determining whether to grant a continuance. (§ 352, subd. (a); *In re Gerald J.* (1991) 1 Cal.App.4th 1180, 1186–1187 [2 Cal.Rptr.2d 569].) As a reviewing court, we can reverse an order denying a continuance "only upon a showing of an abuse of discretion." (*In re Gerald J., supra,* at p. 1187.)

The continuance was requested on the day of the section 366.26 hearing. Although the hearing was continued due to the mother's apparent illness, Phillips requested a longer continuance so he could prepare to represent the father. Phillips had no experience in dependency law. His estimate of three weeks to prepare for a trial on termination of his client's parental rights was optimistic, to say the least.

■ Dependency is a specialized practice. It is not a field where expertise can be acquired on a moment's notice, or even in three weeks. The Legislature has mandated that the courts establish procedures for ensuring all parties in a dependency action are represented by competent counsel. (§ 317.6.) The juvenile court should not have taken Phillips at his word that he would need only three weeks to be able to try the father's termination hearing.

■ It was not an abuse of discretion to deny a continuance which would have substantially delayed the termination hearing.

## DISPOSITION

The orders of the juvenile court are affirmed.

Nicholson, Acting P. J., and Robie, J., concurred.

Appellants' petitions for review by the Supreme Court were denied November 17, 2010, S186727.