Filed 5/20/14  In re G.G. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re G.G. et al., Persons Coming Under the Juvenile Court Law. | |
| SOLANO COUNTY HEALTH AND HUMAN SERVICES DEPARTMENT,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>J.T. et al.,<br><br>        Defendants and Respondents. | A139686<br><br>(Solano County<br>Super. Ct. No. J40862-3) |

William G. and Justine T. (the parents) appeal from an order of the juvenile court, pursuant to Welfare and Institutions Code[1] section 366.26, terminating their parental rights with respect to their children, G.G. and D.G. (the children).

On appeal, William asserts that the court erred by:  (1) relieving his appointed counsel and appointing new counsel in a manner contrary to Code of Civil Procedure section 284; (2) failing to provide him notice of the substitution of counsel; and (3) denying an oral motion for a continuance of the section 366.26 hearing.  Justine joins in William's appeal without independent argument.

---

[1]  Unless otherwise indicated, all statutory references are to the Welfare and Institutions Code.

1

We agree with William that the court relieved his appointed counsel and appointed new counsel in a manner contrary to Code of Civil Procedure section 284, but the error was harmless.  We find no merit in William's other arguments and affirm the order of the court.

## BACKGROUND

William and Justine formed a relationship at some point prior to 2006.  William told a social worker in 2011 that he and Justine were "in a relationship."  In 2012, Justine reported that she was married to William, but a date of marriage was not stated.

In 2006, William was arrested for possession of methamphetamine and was later placed on probation until January 2012.

William's and Justine's children, G.G. and D.G., were born in 2006 and 2007, respectively.  G.G. and D.G have an older half sibling, N.S., Justine's daughter, who was 14 years old in May 2011.[2]  Between 2005 and 2011, the Solano County Health and Human Services Department (department) received six referrals for child neglect and/or physical abuse, each referral involving one or more of the three children.  The first five referrals were determined to be unfounded or inconclusive.

On May 4, 2011, a social worker interviewed Justine about the fifth referral.  The social worker observed that Justine had red, fresh scab marks on her face, the type of blemishes "often associated with the use of methamphetamine."  Justine admitted recent methamphetamine use, but denied its use in the presence of the children.  At a second interview on May 11, 2011, Justine denied recent methamphetamine use, but was unable to explain her prior admission.

On May 19, 2011, the department received a report from "RP" that the parents were abusing drugs and would "yell and hit the children all the time."  The police performed a welfare check, searched the residence and found a bag containing methamphetamine and a glass pipe.  William admitted that the items seized were his and he was arrested.  The police observed that Justine's speech was rapid, her face was pale,

---

[2] N.S. was not involved in these proceedings and receives little mention in the record.

and she had sores on her face.  She also had a dry mouth and dilated pupils.  The children were filthy and Justine seemed to have no control over them.  Justine stated that William had smoked methamphetamine in the house while the children were in their care.  The police placed the children in protective custody.  The department then placed the children in a foster home.

On May 23, 2011, the department filed a juvenile dependency petition, pursuant to section 300, subdivisions (b) and (g); a detention report recommending that the children be detained; and copies of police reports from the recent welfare checks.  At the detention hearing on May 24, 2011, the court found that the department had made a prima facie case for detention and ordered the children detained.

On June 9, 2011, the department filed a jurisdiction report recommending that the allegations in the petition be sustained and the children continue to be detained.  The report noted that hair follicle tests for both children were positive for methamphetamine.  At a contested jurisdictional hearing, the court sustained two allegations and dismissed another on the department's motion.  On September 29, 2011, at a later disposition hearing, the court ordered reunification services for William and Justine, along with supervised visitation

On November 18, 2011, the department placed G.G. and N.S. in a second foster home, where they resided throughout the remainder of the proceedings.

Throughout the course of the ensuing proceedings, William and Justine were responsible for numerous delays.  Justine received new counsel following a *Marsden* motion, delaying a contested disposition hearing.  William received new counsel following a *Marsden* motion, causing a special interim review to be taken off calendar.  William's new counsel was relieved after another *Marsden* motion, causing a delay in the six-month review hearing.  Justine's new counsel was relieved after another *Marsden* motion, causing a delay in the 12-month status review.  William's third counsel was relieved after another *Marsden* motion, causing further delay in the 12-month hearing.  The court appointed Natalie Karas to represent William and warned both parents that "at some point in time this court is going to find that it's not a problem of the lawyers, but

3

it's the problem of the parents." Justine's fourth counsel was relieved on her own motion, causing a delay in a combined 12- and 18-month review.

In November 2012, before the combined 12- and 18-month review actually occurred, William made his final *Marsden* motion, which the court denied. The court told William: "[Y]our conduct has repeatedly interfered with our process. You have gone through attorney after attorney. Your insistence on pursuing issues, which attorneys who are very qualified refuse to pursue for you, in the court's mind [borders] on a waiver of your right to counsel because you persist in arguments with lawyers who are very qualified. You've gone through either the public defender and/or the conflict defender in this case. You've gone through private counsel in this case. You now have an attorney who is extremely experienced and is [eminently] qualified, and it is your conduct, sir, that in the court's mind, is the issue, not the representation of Ms. Karas."

The parents' nonappearance at noticed hearings and the inability of appointed attorneys to contact the parents also resulted in delay.

William and Justine consistently failed to comply with their case plans, which included maintaining a stable and suitable residence, drug testing, and substance abuse assessments. They refused to allow social workers to see their current residence or to provide their address to the department. Moreover, the children had speech problems and the parents refused to sign necessary forms, resulting in the need for a court order. The court later limited the parents' educational rights. The parents' visits with the children initially went well, but their presence at scheduled times became increasingly sporadic. Of the first eight scheduled visits in 2013, from January through April, the parents showed up only at one. When the parents failed to appear, the children did not communicate a desire to see them.[3]

When the 12- and 18-month hearing actually occurred, on November 13 and 26, 2012, the court found that the parents had obstructed the department from contacting

_____

[3] However, in May 2013, the parents had informal contact with the children at G.G.'s baseball game. After the game, the children were excited to see their parents and asked the foster mother if the parents could come to the foster home.

4

them, the department had provided reasonable services, the parents failed to comply with components of their case plan, and it would be detrimental to return the children to the parents under the circumstances. The court terminated reunification services and set May 7, 2013, for a hearing pursuant to section 366.26.

On April 19, 2013, the department submitted a section 366.26 report recommending that the court terminate William's and Justine's parental rights and order a permanent plan of adoption for the children.

As noted above, G.G. and D.G. were placed together in a foster home and had been there ever since November 18, 2011. Both children were in good health, developing normally, engaged in play therapy, and were "thriving" in foster placement. A later addendum assessed G.G. and D.G. to be generally adoptable because they were physically healthy, had no unmet needs, were relatively young, sociable, and showed an ability to bond with parental figures. The foster parents had expressed willingness to adopt the children, understood the legal and financial obligations of adoption, were committed to permanently caring for the children, and had no legal impediment that would prevent adoption.

At the section 366.26 hearing on May 7, 2013, both Justine and William were present.[4] The court set June 18, 2013, for a contested section 366.26 hearing.

On June 10, 2013, based on an oral ex parte request by Karas and good cause appearing, the court ordered Karas relieved as the attorney of record for William and appointed Mindy Geller to represent him. Copies of the order were sent separately to Justine and William at their mailing address of record, the home of William's mother. Both envelopes were returned to the court, marked "Return to sender." Although the marked envelopes and their contents are in the record, there is not a formal proof of service.

---

[4] William's counsel told the court that William was present, but the clerk's transcript indicates that William was not present. The parties agree that he was actually present at the hearing.

At the contested section 366.26 hearing on June 18, 2013, William and Justine apparently were not present.[5] The court stated that Karas had been replaced because a significant family medical emergency had necessitated shutting down her law practice. Geller requested a continuance because she was not yet prepared to proceed and the court continued the matter to August 1, 2013.

William and Justine were present on August 1, 2013. Geller made an oral request for a continuance because she had not been able to meet with William until that day. The court denied the request and noted that the start of the hearing had been delayed by an hour and a half and that the court assumed that Geller had conferred with William during that time. Geller confirmed that she had. At the conclusion of the hearing, the court terminated William's and Justine's parental rights, finding that the children were both generally and specifically adoptable and there were no exceptions that prevented termination of parental rights.

On August 30, 2013 and September 10, 2013, Justine and William, respectively, filed timely notices of appeal. Justine joined in William's brief, but did not file her own.

## DISCUSSION

William contends that the trial court first erred because the appointment of Geller as his counsel in place of Karas was: "1) not completed by way of a hearing following a noticed motion, where William could have exercised his right to be present; and 2) because William was not provided notice of the substitution." [6] He further argues that

---

[5] The reporter's transcript and clerk's transcript disagree whether William and Justine were present. Because Geller was present on June 18, 2013, and later stated that she had not been able to meet with William prior to August 1, 2013, we conclude that William was not present on June 18, 2013.

[6] The department argues that William has waived the issue of error concerning the substitution of Geller for Karas because argument concerning that error is not presented under a separate heading in William's opening brief, as required by California Rules of Court, rule 8.928. Because the substitution of Geller for Karas affects whether there was good cause for the motion to continue on August 1, 2013, we do not deem the issue waived.

6

"the court exacerbated this error, by denying Attorney Geller's motion for a continuance of the August 1, 2013 section 366.26 hearing."

**I. *The Substitution of Karas with Geller***

It is undisputed that William had a statutory right to appointed representation in this case. (§ 317, subd. (b).) Substitution of counsel is governed by Code of Civil Procedure section 284, which provides: "The attorney in an action or special proceeding may be changed at any time before or after judgment or final determination, as follows: [¶] 1. Upon the consent of both client and attorney, filed with the clerk, or entered upon the minutes; [¶] 2. Upon the order of the court, upon the application of either client or attorney, after notice from one to the other." California Rules of Court, rule 3.1362(a) provides that "A notice of motion and motion to be relieved as counsel under Code of Civil Procedure section 284(2) must be directed to the client and must be made on the *Notice of Motion and Motion to Be Relieved as Counsel—Civil* (form MC-051)." When Karas applied to the court to be relieved as counsel for William, it does not appear that the court's order granting Karas's application was preceded by notice from Karas to William. Accordingly, Karas's application did not comply with California Rules of Court, rule 3.1362(a) and the court's order appointing Geller in place of Karas was not made in compliance with Code of Civil Procedure section 284. (See *In re Andrew S.* (1994) 27 Cal.App.4th 541, 546-547 [applying Code of Civil Procedure section 284 in a dependency case].)

However, because the right to counsel in dependency cases is a statutory and not a constitutional right, a failure in compliance with Code of Civil Procedure section 284 is reversible error only if it is shown to be prejudicial. (*In re Andrew S.*, *supra*, 27 Cal.App.4th at p. 549.) None has been shown here.

William does not note any valid objection he might have raised in opposition to Karas's application to withdraw as his counsel, had he received notice of the application to withdraw. Indeed, William had sought to have Karas replaced by making a *Marsden* motion in November, 2012. Even if William had raised a valid objection, we have no reason to believe that the court would not have granted Karas's application when the

7

family medical emergency that she faced was so severe that she had to close her law practice. William fails to establish that the replacement of Karas by Geller was prejudicial to him, under any standard of prejudice. Accordingly, we will not reverse because Karas and the court did not comply with the requirements of Code of Civil Procedure section 284.

We next consider the issue of notice of the substitution of counsel. The minute order of the court that made the substitution of counsel indicates that copies of the order were sent to the parties, including William and Justine, and their counsel. Copies of the envelopes addressed to William and Justine, marked "return to sender," are in the record before us. Copies of the court's minute order follow each of these envelopes in the record, indicating that the minute order was contained in each envelope. The envelopes were addressed to the residence of William's mother, the address that William and Justine had provided to the court multiple times as their permanent mailing address. Despite this, William observes that "there is no proof of service attached to the order" and claims that he "was not provided notice of the substitution."

Section 316.1, subdivision (a), provides: "Upon his or her appearance before the court, each parent or guardian shall designate for the court his or her permanent mailing address. The court shall advise each parent or guardian that the designated mailing address will be used by the court and the social services agency for notice purposes unless and until the parent or guardian notifies the court or the social services agency of a new mailing address in writing." William designated his mother's address as his permanent mailing address for the court on June 22, 2011, and September 23, 2011. Justine also designated the address of William's mother as her permanent mailing address on June 22, 2011, and August 29, 2011. No other designations of a permanent mailing address for William or Justine are found in the record. Accordingly, notice of the substitution of counsel for William was properly served by the court. If William was no longer able to receive mail at his mother's address it was his responsibility to update his mailing address with the court. The court had already noted, on January 7, 2013, that

8

William was the "author of his own misfortune" if difficulties resulted from problems receiving mail sent to his mother's address.

William is correct that the record does not contain a formal proof of service that notice of the substitution of counsel was provided to him. However, generally, a proof of service is required only when a statute or rule invokes a requirement to "serve and file" a document (Cal. Rules of Court, rule 1.21(b)) or if the statute or rule explicitly calls for proof of service (e.g., Code Civ. Proc., § 664.5; Cal. Rules of Court, rule 2.1100). California Rules of Court, rule 3.1362(e) provides that "a copy of the signed order [granting a motion to be relieved as counsel] must be served on the client and on all parties that have appeared in the case." Because this rule does not impose a "serve and file" requirement, the filing of a proof of service was not required, unless otherwise specified by rule or statute. William does not identify a rule or statute requiring proof of service, nor have we found one.

Further, the record contains evidence that the order substituting counsel was properly served on William, and no evidence to the contrary. If William did not receive actual notice until a later time, he was the author of his own misfortune. We find no error concerning the notice provided to William.

## II. *The Denial of William's Request for a Continuance*

Section 352, subdivision (a), provides: "Upon request of counsel for the parent, guardian, minor, or petitioner, the court may continue any hearing under this chapter beyond the time limit within which the hearing is otherwise required to be held, provided that no continuance shall be granted that is contrary to the interest of the minor. In considering the minor's interests, the court shall give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements.

"Continuances shall be granted only upon a showing of good cause and only for that period of time shown to be necessary by the evidence presented at the hearing on the motion for the continuance. Neither a stipulation between counsel nor the convenience of the parties is in and of itself a good cause. Further, neither a pending criminal

9

prosecution nor family law matter shall be considered in and of itself as good cause. Whenever any continuance is granted, the facts proven which require the continuance shall be entered upon the minutes of the court.

"In order to obtain a motion for a continuance of the hearing, written notice shall be filed at least two court days prior to the date set for hearing, together with affidavits or declarations detailing specific facts showing that a continuance is necessary, unless the court for good cause entertains an oral motion for continuance."

We review a trial court's denial of a motion for a continuance for abuse of discretion. (*In re V.V.* (2010) 188 Cal.App.4th 392, 399.) In determining whether the court abused its discretion, we also consider that "[a]fter reunification efforts have failed, it is not only important to seek an appropriate permanent solution—usually adoption when possible—it is also important to *implement* that solution reasonably promptly to minimize the time during which the child is in legal limbo. A child has a compelling right to a stable, permanent placement that allows a caretaker to make a full emotional commitment to the child." (*In re Celine R.* (2003) 31 Cal.4th 45, 59.)

After Geller was substituted as William's counsel, Geller appeared for William on June 18, 2013, the date set for the contested section 366.26 hearing. William and Justine were not present. Because Geller had been appointed only eight days before and was not yet prepared to proceed, the court granted a continuance to August 1, 2013.

With no indication to the contrary in the record, we must assume that Geller received files from Karas and performed his duty by familiarizing himself with the record, including the reports and recommendations filed by the department. We must also assume that Geller made reasonable attempts to contact William in order to consult with him prior to the August 1, 2013 hearing (William does not argue otherwise). Geller apparently had difficulty contacting William, as had prior counsel who had represented him, because Geller informed the court on August 1, 2013, that she had been unable to meet with William before that day. Geller confirmed to the court that she had been able to consult with William during the hour and a half delay in the start of the hearing.

10

When Geller made an oral motion for a continuance, the court stated: "[T]his is the date and time that has been set, and we set this hearing for your appearance on June 10th. Or, you were appointed on June 10th because Ms. Karas had the emergency that actually caused her to shut down her practice. [¶] So I don't see a written motion to continue, and I'm not going to grant that request."

Pursuant to section 352, subdivision (a), Geller should have filed a written notice of the request for a continuance at least two days before, although the court had the discretion to entertain an oral motion on a showing of good cause. The fact that Geller had not been able to consult with William was not a new fact that demonstrated good cause for the court to entertain an oral motion for a continuance. Geller knew two days beforehand that she had not consulted with William and had reason, on that basis, to file written notice of the request for a continuance at that point.

Moreover, the court was well aware of the history of the case and delays that had already occurred, due primarily to the actions and inactions of the parents themselves. The effect of William's and Justine's tactics of delay resulted in the section 366.26 hearing being held more than 26 months after the children were initially detained. The court had already granted a continuance for Geller to prepare herself to proceed with the case and the record amply demonstrates that further delay would have been contrary to the interests of G.G. and D.G. We find no abuse of discretion by the juvenile court.

Even assuming that the court erred, the parents were not prejudiced by the denial of the continuance. Section 366.26, subdivision (c)(1) provides that if it is likely the child will be adopted, based on clear and convincing evidence, "the court shall terminate parental rights and order the child placed for adoption" unless one of several exceptions applies. William and Justine do not dispute that G.G. and D.G. are adoptable and the record amply demonstrates that they are—and that their foster parents are willing to adopt them. None of the exceptions to the mandate of section 366.26, subdivision (c)(1) applies in this case. In particular, the exception contained in section 366.26, subdivision (c)(1)(B)(i) ("The parents have maintained regular visitation and contact with the child

11

and the child would benefit from continuing the relationship") does not apply because William and Justine had not maintained regular visitation and contact with G.G. and D.G.

William argues that "over the course of the entire dependency he had regularly visited his children and that they were bonded to him such that the termination of parental rights would have been detrimental to them. Indeed, in May 2013, when he had informal contact with the minors at G.G.'s baseball game, the children were excited to see him and asked the foster parents if William and mother could return to the foster home to visit." William forgets that prior to contacting the children in May 2013, he and Justine had missed seven of eight scheduled visits. He also forgets that he had ample opportunity in the hour and a half before the section 366.26 hearing to remind Geller about seeing the children at G.G.'s baseball game. William does not appreciate that the children asked the foster parents for permission, demonstrating that they were aware that the foster parents were in a position of parental authority. Moreover, the children wanted to go to the foster parents' home, demonstrating that the children felt safe and comfortable in the foster home.

Even had William and Justine maintained regular contact with the children, there was no evidence that the children would benefit from continuing a relationship with them. Throughout the dependency proceedings, the parents demonstrated insensitivity to their children's needs, by failing to approve appropriate educational testing and by consistent noncompliance with the requirements of their case plans. They failed to demonstrate maintenance of a stable and suitable residence, failed to submit negative drug test results, and failed to undergo substance abuse assessments. We have no reason to believe that with a continuance, any argument could have been made that would have resulted in a different outcome. Accordingly, the parents were not prejudiced by the denial of a continuance.

12

## DISPOSITION

The order of the trial court terminating William's and Justine's parental rights is affirmed.

_____
Brick, J.*

We concur:

_____
Kline, P.J.

_____
Richman, J.

\* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.