Filed 8/17/20  In re D.G. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re D.G., a Person Coming Under the Juvenile Court Law. | B301091 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>E.G.,<br><br>　　　Defendant and Appellant. | (Los Angeles County Super. Ct. No. 19LJJP00605)<br><br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING (NO CHANGE IN JUDGMENT) |

THE COURT:

The opinion in the above-entitled matter filed on July 29, 2020 is modified:

On page 12, the following sentence is deleted:

"And in D.G.'s presence, Father stabbed furniture, and broke the mother's phone."

That sentence is replaced with the following sentence:

> Father also stabbed furniture and broke the mother's phone.

This modification does not constitute a change in the judgment.

The petition for rehearing filed on August 7, 2020 by appellant E.G. is denied.

_____

ROTHSCHILD, P. J.        CHANEY, J.        BENDIX, J.

Filed 7/29/20  In re D.G. CA2/1 (unmodified opinion)

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re D.G., a Person Coming Under the Juvenile Court Law. | B301091 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>E.G.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. 19LJJP00605) |

        APPEAL from orders of the Superior Court of Los Angeles County, Steven E. Ipson, Juvenile Court Referee.  Affirmed.

        Lisa A. Raneri, under appointment by the Court of Appeal, for Defendant and Appellant.

        Mary C. Wickham, County Counsel, Kim Nemoy, Acting Assistant County Counsel, and Jacklyn K. Louie, Principal Deputy County Counsel, for Plaintiff and Respondent.

E.G. (Father) appeals from the jurisdiction and disposition orders declaring his son, D.G., a dependent of the court under Welfare and Institutions Code section 300, subdivisions (a) and (b)(1),[1] and removing D.G. from Father's custody. Father also appeals from the permanent restraining order against him. He contends that the juvenile court erred in failing to grant his request for a continuance of the jurisdiction and disposition hearing to allow him to retain private counsel and that the court should have excluded D.G. from the permanent restraining order. We disagree and affirm.

## FACTUAL BACKGROUND

The family consists of Father, the mother, F.G. (the mother), their child, D.G. (born in August 2018), and D.G.'s half sibling, I.G. (born in 2017).[2] The parents have never been married or lived together. For the entirety of Father's relationship with D.G.'s mother, he has been married to another woman, and together they have nine children.

On July 11, 2019, the family came to the attention of the Los Angeles County Department of Children and Family Services (DCFS) based on allegations of Father's ongoing physical abuse of the mother while the children were present. The latest abuse reported was a June 21, 2019 incident, alleging that Father, a former gang member, had punched the mother multiple times

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2] The children in this case have the same mother but different fathers. Father is D.G.'s biological father and I.G.'s father is A.A. Only Father and D.G. are parties to this appeal.

and had threatened to harm her and the maternal grandfather if she reported the abuse.

On July 12, 2019, the family law court granted the mother an emergency temporary restraining order against Father, prohibiting him from any contact with the mother and the children.

When interviewed by the DCFS investigator, the mother reported that after she obtained the restraining order, she and the children left the state because she was afraid that Father would find her and retaliate against her. She also disclosed that she and Father had been in a relationship for about two years, and although he did not live with her, he visited her apartment daily. She stated that he was very jealous and had been physically and verbally abusive to her throughout their relationship. She disclosed that in January 2019 her neighbor had called the police after overhearing the mother screaming and one of the children crying. Although Father had been abusing the mother at the time, when the police responded to the call, the mother denied the abuse because she was afraid of Father.

As for the June 21, 2019 incident that resulted in the report to DCFS, the mother stated that Father had accused her of cheating on him, and he pushed and punched her several times in the face and cursed at her. The children were present during the incident. The mother did not initially call the police after the incident because she was afraid that Father would follow through with his threat to hurt the maternal grandfather, but after the mother observed two-year-old I.G. act out the June 21 event by mimicking a punch and pain, she decided to report Father. She stated that she planned to seek a permanent restraining order against him.

The mother's coworker corroborated that the mother had bruises. He also observed that when Father came to the mother's workplace, they would argue, and the coworker stated that the mother eventually disclosed the domestic violence in her relationship with Father.

When the social worker interviewed Father, he stated that he and the mother had problems in their relationship because he had refused to leave his marriage. He denied physically or verbally abusing the mother or threatening her with harm. Father claimed that the mother had issues with jealously and that she engaged in self-harm. He denied "domestic violence" in the relationship with his wife and their children.

On August 22, 2019, DCFS filed a section 300 petition on behalf of 12-month-old D.G., as well as his two-year-old half sibling, I.G., based on the allegations of Father's ongoing domestic violence against the mother in the children's presence and the mother's failure to protect them by allowing Father to have access to the children. The petition further alleged that Father's conduct endangered the children's physical health and safety and placed them at substantial risk of serious physical harm. A copy of the July 12, 2019 emergency protective order against Father was also attached to the petition.

The parents appeared at the detention hearing on August 23, 2019, and the court appointed Father counsel. Father's counsel objected to the child's detention from Father; alternatively, she asked for unmonitored visitation. Father's counsel represented that Father denied any physical abuse in the relationship and believed that the mother had inflicted the injuries on herself. The court found prima facie evidence to detain D.G. from Father and ordered the child released to

4

the mother.  The court ordered that Father have weekly monitored visits.

The court also took jurisdiction of the restraining order proceedings, and on August 26, 2019, held a hearing on the mother's request for a temporary restraining order against Father.  Father's appointed counsel appeared at that hearing, opposed the restraining order, and asked the court to exclude D.G. from the order.  The court, however, granted a temporary restraining order (TRO) covering both children and scheduled the hearing for a permanent restraining order for September 23, 2019, the date of the jurisdiction and disposition hearing.

The jurisdiction/disposition report revealed that Father had a criminal history including arrests for robbery, a conviction for battery and was arrested for inflicting corporal injury on the mother on June 21, 2019.

When the dependency investigator re-interviewed the mother, she described that Father attempted to control every aspect of her life, including how she dressed and with whom she interacted.  The mother also reported multiple incidents of physical violence before and after D.G.'s birth.  She disclosed that once, while she was holding six-month-old D.G., Father struck her in the face causing her to bleed from the mouth.  The mother further reported that Father  "stab[ed]" furniture and broke her phone after he learned that it contained photographs of her injuries.

Father also was re-interviewed, and he continued to deny physically assaulting the mother; he repeated that the mother's injuries were self-inflicted.

On September 23, 2019, the date set for the combined jurisdiction, disposition, and restraining order hearings, Father

and his counsel, the mother and her counsel, and counsel for DCFS were present.  Before the hearing began, Father asked to replace his appointed counsel, and the court conducted a *Marsden*[3] hearing.  At the hearing, Father expressed that he was unhappy with his appointed counsel because he did not like her advice.  The court denied Father's request, expressing that it did not appear that his lawyer had been ineffective or that the communication between them had broken down.[4]  Father's counsel then informed the court, "My client is requesting a continuance for him to hi[re] private counsel," without specifying how long a continuance he was requesting or providing any other information on the subject.  The court denied the request, commenting that this was the day scheduled for the hearings.

The court then asked all counsel if they were ready to proceed, and they all answered in the affirmative.  After the presentation of the evidence, which consisted solely of DCFS's reports, DCFS and the children's counsel urged the court to sustain the petition and remove D.G. from Father.  Father's counsel argued that the court should dismiss the petition, pointing to Father's denials, the absence of evidence of domestic violence in his long-term marriage, and the fact that no one witnessed the abuse.  His counsel also reiterated Father's position that the mother fabricated the domestic violence claims.  Father's counsel also asked that the restraining order request be denied, and in the alternative, the court not include D.G. as a protected person, noting that if the court took jurisdiction, it

---

[3] See *People v. Marsden* (1970) 2 Cal.3d 118.

[4] On appeal, Father has not challenged the trial court's denial of his *Marsden* request.

6

could protect the child by ordering monitored visitation for Father.

The court sustained the section 300 petition under subdivision (b)(1), declared the children dependents of the court, and removed custody of D.G. from Father, and ordered that he remain placed with the mother. The court also granted a three-year restraining order that included D.G. as a protected person with a carve-out for Father's monitored visitation.

Father timely appealed.

## DISCUSSION

Father asserts that the court erred in failing to grant a continuance of the hearings to allow him to retain private counsel and that the court should have excluded D.G. from the permanent restraining order. We disagree.

### A. *Trial Court Did Not Abuse its Discretion by Denying Father's Request for a Continuance*

A juvenile court's order denying a continuance is reviewed for an abuse of discretion. (*In re A.B.* (2014) 225 Cal.App.4th 1358, 1366.) The test for abuse of discretion is " ' " 'whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deducted from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' " [Citations.]' [Citation.] The abuse of discretion standard warrants that [appellate courts] apply a very high degree of deference to the decision of the juvenile court." (*In re J.N.* (2006) 138 Cal.App.4th 450, 459.)

The jurisdiction hearing on a section 300 petition must be held within 30 days of the filing of the petition. (§ 334 ["[u]pon the filing of the petition, the clerk of the juvenile court shall

7

set the same for hearing within 30 days . . . from the date of the order of the court directing such detention"]; see also *In re Daniel S.* (2004) 115 Cal.App.4th 903, 913–914.)

The court, however, may continue the hearing beyond 30 days if the continuance is not contrary to the interest of the child. (§ 352, subd.(a)(1) ["the court may continue any hearing . . . beyond the time limit within which the hearing is otherwise required to be held, provided that a continuance shall not be granted that is contrary to the interest of the minor"].) The hearing may be continued beyond 60 days only in exceptional circumstances, but in no case beyond six months. (§ 352, subd. (b).)

In considering the child's interests, the court shall give substantial weight to the child's need for prompt resolution of the child's custody status, the need to provide a child with a stable environment, and where there is a temporary placement, the damage to a child of such a placement. (§ 352, subd. (a)(1).)

Father asserts that he demonstrated good cause for his request for a continuance to retain private counsel because such counsel was critical to the preservation of his parental rights and would not have prejudiced D.G. because the child remained placed with the mother. Although we agree with Father that the facts do not show extreme prejudice to the child because he remained with his custodial parent, prompt resolution of a child's status is in a child's best interest, as evidenced by the code sections limiting the time period for granting continuances. Further, the denial of a continuance may be justified if it would cause disruption to the proceedings. (See, e.g., *In re V.V.* (2010) 188 Cal.App.4th 392, 398; see also *In re Giovanni F.* (2010) 184 Cal.App.4th 594, 603–604 (*Giovanni F.*).) That is the case

8

here. Father made his *Mardsen* motion and request for a continuance on the date of the hearings without earlier notice to the court or the parties. Further, Father was, or should have been, aware that his request to replace his counsel might not be granted, but made no showing that he had even explored retaining private counsel. The inconvenience to all counsel in having to return at a later date and again prepare for the hearings, as well as the court's need to manage its calendar in an extremely busy court, justified denial.

We find support for our opinion in *Giovanni F.,* where the father sought a continuance to substitute his attorney after the jurisdictional hearing had begun. The juvenile court "denied the request, citing section 352 and noting the [adjudication] had commenced, there had been ample time for [the father] to hire an attorney and, given [the child]'s age, it would not be in his best interests to continue the hearing." (*Giovanni F., supra,* 184 Cal.App.4th at pp. 603–604.) The appellate court held that refusing a continuance was not abuse of discretion, stressing that continuances are discouraged in dependency cases and that no continuance may be granted that is contrary to the child's interests. (*Id.* at p. 604.) Prior to the jurisdictional hearing the child was detained with the grandmother and remained placed with her afterwards. The court concluded that the child was entitled to a timely resolution of his custody status and that the father waited more than a month from setting this hearing to request the substitution of counsel. (*Id.* at p. 605.)

The factual differences between this case and *Giovanni F.* are not legally significant. In both cases the child was living with a relative and thus would not have suffered serious prejudice from a continuance. And although here, unlike in *Giovanni F.,*

the hearings had not yet begun, all parties were present and ready to proceed, making the inconvenience to parties and court comparable to *Giovanni F.* Under these circumstances, Father has not convinced us that the court abused its discretion in denying his request for a continuance.

**B.** ***The Court Did Not Err in Including D.G. as a Protected Person in the Permanent Restraining Order***

The dependency court has broad discretion to issue restraining orders protecting a dependent child and any caregiver during the pendency of a case (§ 213.5, subd. (a)). Issuance of a restraining order under section 213.5 does not require evidence that the restrained person has previously harmed the child. (*In re B.S.* (2009) 172 Cal.App.4th 183, 193.) Instead, a court may, under section 213.5, issue a restraining order in favor of a child if a failure to make the order might jeopardize the safety of the child. (*In re B.S.*, *supra*, at pp. 193–194.)

Courts have applied both substantial evidence and abuse of discretion standards of review to restraining orders. (*In re N.L.* (2015) 236 Cal.App.4th 1460, 1466.) On appeal, however, there is no practical difference between the two standards since " 'we view the evidence in a light most favorable to the respondent, and indulge all legitimate and reasonable inferences to uphold the juvenile court's determination. If there is substantial evidence supporting the order, the court's issuance of the restraining order may not be disturbed.' " (*Ibid*.)

Father argues that including D.G. as a protected person in the restraining order was unnecessary because there was no evidence that Father would harm the child. We disagree.

10

Father relies on *In re C.Q.* (2013) 219 Cal.App.4th 355, where the court reversed a restraining order against the father, which included three children (ages 11, 12, and 16), and where the facts showed that domestic violence did not occur in the children's presence. (*Id.* at p. 357.) Father also relies on *In re N.L., supra,* 236 Cal.App.4th 1460, where the trial court exercised jurisdiction over a six-year-old child based on sustained allegations that the mother abused drugs and had made false allegations that the father had sexually abused the child. (*Id.* at. p. 1462.) The only evidence in the case regarding the mother's possible danger to the child was that she had threatened the father. Nonetheless, the trial court granted the father's request for a TRO protecting himself as well the child. The appellate court reversed the order protecting the child because there was no evidence that the mother had engaged in any violent or dangerous conduct toward the child, made any threats of such conduct, or that the mother's violent conduct or threats to the father occurred in the child's presence. (*Id.* at p. 1469.)

These cases do not persuade us. D.G. is significantly younger than the children involved in *In re C.Q.* and *In re N.L.* And, because the children in those cases were older, they could summon help if their parents engaged in dangerous or harmful behavior. In contrast, D.G. is a preverbal toddler, entirely dependent on adults for care. Moreover, unlike the children in the cases on which Father relies, D.G. was present when Father physically assaulted the mother. Father's other violent and erratic behavior in D.G.'s presence distinguishes this case from those cases where the appellate courts have reversed restraining orders which included children.

11

Father's case is more comparable to *In re B.S., supra,* 172 Cal.App.4th 183, where the court affirmed the inclusion of an infant in a restraining order. There, the court concluded that the father's "tendency to resort to violence" and "lack of impulse control" posed a risk to the child's safety even in the mother's absence. (*Id.* at p. 194.) Although Father argues that he never harmed or threatened the child, as in *In re B.S.,* "[s]uch a threat could arise, even in the mother's absence if the father got angry with another adult or with [the child]." (*Ibid.*) Here, Father's lack of impulse control and violent tendencies are shown by his numerous physical assaults on the mother, including at least once while she was holding D.G. And in D.G.'s presence, Father stabbed furniture, and broke the mother's phone. As in *In re B.S.,* Father's lack of control and violent tendencies endangered D.G. even absent the mother's presence. Consequently, the juvenile court reasonably concluded that Father jeopardized the safety of D.G. It therefore did not abuse its discretion in including D.G. in the restraining order.

## DISPOSITION

The orders are affirmed.

<u>NOT TO BE PUBLISHED</u>.


ROTHSCHILD, P. J.

We concur:


CHANEY, J.


BENDIX, J.


13