Filed 1/19/21  In re Z.S. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re Z.S., a Person Coming Under the Juvenile Court Law. | |
| CONTRA COSTA COUNTY CHILDREN AND FAMILY SERVICES BUREAU,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>Z.S.,<br><br>        Defendant and Appellant. | A158875<br><br>(Contra Costa County<br>Super. Ct. Nos. J19-00313, J19-00314) |

Z.S. (father) appeals from the juvenile court's disposition order denying him reunification services in the dependency matter concerning his children, Z.S. and Z.S. (children) under Welfare and Institutions Code[1] section 300. Father contends the juvenile court erred at the jurisdictional hearing by not conducting a hearing under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*) when father told the court his lawyer had not relayed to the court his desire for such a hearing.  We conclude the record does not support father's

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

contention that he asked for a *Marsden* hearing, so the juvenile court did not err.

## I.   BACKGROUND

In August 2019, the juvenile court assumed jurisdiction over the children based on its finding that the children's mother's mental illness and acts of domestic violence against father placed them at serious risk of physical harm. The juvenile court also found father might have an undiagnosed mental illness and had engaged in domestic violence against mother, which also placed the children at serious risk of physical harm. The court further found father's reunification services had been terminated as to the children's half-sibling, which created a substantial risk that the children would be abused or neglected. Father was incarcerated in county jail at the time of the jurisdiction hearing and remained in jail at the time of the disposition hearing. At the disposition hearing, the juvenile court placed the children under the supervision of the Contra Costa County Children and Family Services Bureau and ordered reunification services for mother. The juvenile court denied reunification services for father, because it found father had failed to address his mental health issues that had led to the removal of the children's half-sibling in a prior dependency case.

## II.   DISCUSSION

Though father appealed from the dispositional order, his only challenge is to the court's jurisdictional findings. Father admits that this challenge cannot affect the outcome of this case, because mother has not challenged the jurisdictional findings against her and "a jurisdictional finding good against one parent is good against both." (*In re Alysha S.* (1996) 51 Cal.App.4th 393, 397.) In such circumstances, appellate courts "nonetheless retain discretion to consider the merits of a parent's appeal [citation], and often do so when the

finding '(1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) "could have other consequences for [the appellant], beyond jurisdiction" [citation].' " (*In re M.W.* (2015) 238 Cal.App.4th 1444, 1452.)  We will grant father's request that we exercise this discretion and consider the merits of father's argument because the court's jurisdictional finding could potentially affect whether the juvenile court someday places the children with father.  (Cf. *In re Christopher M.* (2014) 228 Cal.App.4th 1310, 1317 ["a jurisdictional finding based on conduct of a noncustodial parent would unquestionably be a consideration in assessing detriment under section 361.2, subdivision (a)"].)

Father contends he was entitled to a *Marsden* hearing because he wanted to replace his appointed counsel.  "In a criminal case, when a defendant requests substitute appointed counsel, the trial court must permit the defendant to explain the specific reasons why the defendant believes current appointed counsel is not adequately representing him.  (*Marsden*, *supra*, 2 Cal.3d at pp. 123–124.)  Juvenile courts, relying on the *Marsden* model, have permitted the parents, who have a statutory and a due process right to competent counsel, to air their complaints about appointed counsel and request new counsel be appointed."  (*In re V.V.* (2010) 188 Cal.App.4th 392, 398.)  " 'When a defendant seeks new counsel on the basis that [her] appointed counsel is providing inadequate representation—i.e., makes what is commonly called a *Marsden* motion (*People v. Marsden*[, *supra*,] 2 Cal.3d 118)—the trial court must permit the defendant to explain the basis of [her] contention and to relate specific instances of inadequate performance.' " (*In re Z.N.* (2009) 181 Cal.App.4th 282, 293.)

While father was entitled to a *Marsden* hearing if he requested one, the record shows that he did not, in fact, ask for one in the juvenile court. Father's argument relies on the following colloquy at the jurisdictional hearing:

"THE COURT:  [Father], do you have any idea when you're going to go to trial or what's going to happen on your case that you will be released?

"THE FATHER:  I'm going through a lot with this right now.  I feel like—I don't know how to explain it, but it's going—it's getting out of hand because I'm—I have violated—my constitutional rights violated.  I said it was between some type of obstruction of justice that I'm going through.

"And I feel like I'm just being taunted and mocked.  I have my head even busted while I was in between my public defender while doing a lot of mockery against me.  My head got busted by - - by a deputy here.

"Then the next week, I asked for this same—I asked for a Marsden motion.  And it went on.  That's the same day I got my head busted because she never asked for the Marsden motion.  Then it went on after the next week asking for—after the next court date asking for a Marsden motion.

"And then they never—they just kept her as my public defender after me head was busted.

"THE COURT:  Well, do you have any idea when your next court date is?

"THE FATHER:  I don't have another court date.

"THE COURT:  Oh, you have to.

"THE DEFENDANT: She's doing a lot. I don't even want to talk about it.[2]

"THE COURT: No, I didn't want you to talk about it. I just wanted to know if you thought you would be out by the next hearing.

"THE DEFENDANT: No.

"THE COURT: Okay. Okay. Okay. Then September 12th at 1:30."

We do not agree with father that this record can be reasonably interpreted as a request for a *Marsden* motion in this dependency proceeding. When father mentioned a *Marsden* motion, he was discussing his criminal matter in response to the court's question about when he might be released from jail. Father referred to the counsel he sought to replace through the *Marsden* hearing as his public defender and referred to his *Marsden* request in the past tense as something that had not been granted, not a current request in the juvenile case. Father notes that he referred to the attorney who refused to seek a *Marsden* hearing as "she," and notes that his counsel in juvenile court was a woman. He fails to recognize, however, that he also told the court "they kept *her* as my public defender," indicating that his counsel in the criminal case was also a woman. In these circumstances, the judge had no reason or obligation to ask father about any complaints he had about his counsel in juvenile court.

---

2 The reporter's transcript shifted from identifying father as "Father" to identifying him as "Defendant," without explanation.

5

## III.   DISPOSITION

The juvenile court's orders are affirmed.


BROWN, J.


WE CONCUR:

POLLAK, P. J.
TUCHER, J.

*Contra Costa County Children and Family Services Bureau v. Z.S* (A158875)

6