Filed 11/21/25  In re W.B. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re W.B., a Person Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>S.V.,<br><br>Defendant and Appellant. | F088736<br><br>(Super. Ct. No. JD145421-00)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Kern County.  Christie Canales Norris, Judge.

S.V., in propria persona.

No appearance for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Detjen, Acting P. J., Meehan, J. and DeSantos, J.

In this juvenile dependency case, S.V. (mother), mother of minor child W.B., appeals, in propria persona, from the juvenile court's postdisposition order relieving her attorney and appointing her new counsel following a *Marsden*[1]-type hearing on September 25, 2024.  Her primary contention is that the court did not adequately examine the parties on the alleged failings of counsel's representation.[2]  Mother has not asserted she was in any way harmed or prejudiced by the alleged errors, as the court ultimately relieved her attorney and appointed her a new one.  She therefore has not established grounds for reversal.

We affirm the juvenile court's order from which mother appeals.[3]

---

[1]     *People v. Marsden* (1970) 2 Cal.3d 118.

[2]     Mother's notice of appeal only lists the September 25, 2024 order, but her briefing raises several additional issues unrelated to that order.  We do not address those contentions as they are not properly before us here.

We note that mother has also appealed from the juvenile court's dispositional order in the underlying dependency case, where she raises many of the issues raised in the present appeal, including that the protective custody warrant was invalid, that the jurisdictional and dispositional findings were supported by insufficient evidence, and that her attorney provided ineffective assistance of counsel.  We addressed those issues to the extent they were properly before us in the nonpublished opinion issued in that appeal, and affirmed the dispositional order.  (*In re W.B.* (Aug. 20, 2025, F088142) [nonpub. opn.].)

[3]     As of the issuance of this opinion, mother's reunification services have been terminated at the six-month review hearing, and a Welfare and Institutions Code section 366.26 hearing was set.  Mother filed a petition for extraordinary writ, which this court denied by written opinion.  (*S.V. v. Superior Court* (Feb. 21, 2025, F088973) [nonpub. opn.].)  All statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

Additionally, this court is informed the section 366.26 hearing was conducted on June 12, 2025, and parental rights were terminated.  Both mother and W.B.'s father have appealed from the order terminating their parental rights, and the appeal is pending and in the briefing stage in case No. F090001.

2.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 10, 2024, the Kern County Department of Human Services (department) filed a juvenile dependency petition on behalf of then three-month-old W.B. The petition alleged W.B. came within the juvenile court's jurisdiction under section 300, subdivision (b)(1) due to mother's failure to provide care as a result of mental illness and substance abuse. On January 12, 2024, the juvenile court ordered W.B. detained from mother. On March 13, 2024, the court sustained the petition and found that W.B. was described by section 300, subdivision (b)(1). On April 4, 2024, mother's attorney declared a conflict, and the court relieved her as counsel and appointed mother new counsel. On May 29, 2024, the court adjudged W.B. a dependent child, removed him from mother's physical custody, and ordered her to participate in reunification services.

Prior to the six-month review hearing, on August 27, 2024, mother filed a request for a *Marsden* hearing, stating she was requesting a new attorney due to an "irreparable breakdown in communication" between her and her attorney who was appointed in April 2024. Mother alleged her attorney would not communicate with her outside written communication and was refusing to "further object" to W.B. getting haircuts as he felt it was "unmeritorius [*sic*] and vexatious."[4]

On September 3, 2024, the matter came on for hearing due to mother's request, but mother was not present. Mother's attorney stated that she had represented to him she no longer wanted to pursue the *Marsden* motion and wanted the matter taken off calendar, but that he was now "joining her in the initial *Marsden* request." (Italics added.) The matter was taken off calendar given mother's withdrawal of her request and her absence.

---

[4]  W.B.'s care provider sought court permission to get W.B.'s hair cut because his hair was interfering with his glasses. On August 13, 2024, the juvenile court authorized a haircut over mother's continuing objection.

3.

On September 17, 2024, mother's counsel filed a request for an ex-parte hearing, stating he was declaring a conflict in the case, "[t]he nature of which cannot be disclosed without violating attorney-client privilege."

On September 25, 2025, a closed hearing was held with only mother and her attorney present. The juvenile court questioned the parties at length regarding their relationship. Mother initially stated she was no longer requesting a new attorney but expressed frustrations with feeling like she was unable to speak for herself and testify during the proceedings and that her concerns were not being heard. She was, however, still willing to communicate with her attorney.

Mother's attorney indicated that from his perspective there had been a complete breakdown in communication. He was no longer willing to communicate with mother in person or by telephone because he believed she was recording him without his consent. He was willing to communicate with mother via text message but felt they had gotten to a point where he was unable to communicate with her effectively using that method. The juvenile court advised mother it was a misdemeanor offense to record someone without their consent, and mother denied making any recordings of her attorney. The court questioned the parties about whether they would be able to communicate in person if mother's phone was off. Counsel represented he already tried asking mother to turn off her phone but subsequently noticed the phone still appeared to be on, and when he confronted mother about it, she insulted him. Mother vehemently denied this incident occurred.

Mother went on to explain that when her attorney was appointed, she told him that she had previously been unable to testify and that she wanted to contest the jurisdictional allegations because they were not true.[5] The juvenile court ascertained that counsel had

---

[5] The record indicates that mother contested the jurisdictional allegations and testified at the jurisdiction hearing conducted on March 13, 2024.

4.

been appointed after the court had already sustained the jurisdictional allegations. The court further elicited that at the time of counsel's appointment, mother was facing bypass of reunification services because she was refusing to attend a court-ordered psychological evaluation for determination of whether services would be beneficial. Counsel encouraged her to attend the evaluation. Mother heeded his advice and was ultimately granted reunification services. Counsel asserted mother had not asked to testify at the dispositional hearing, and he never told her she could not testify.

The juvenile court noted that counsel had given mother "very sage advice" regarding the psychological evaluation and that while mother may not have agreed with the jurisdiction allegations being found true, that occurred while she was represented by her previous attorney, and her current attorney had "proceeded properly at every stage since then."

Mother then explained she understood but was still upset. She felt her attorney misled her into thinking that she would be able to contest the jurisdictional allegations if she completed the psychological evaluation and that turned out to be untrue.

At that point, the juvenile court concluded there had been a breakdown in communication between mother and her attorney. The court relieved mother's attorney and appointed a new one.

## DISCUSSION

In the criminal context, a motion to obtain new appointed counsel because current appointed counsel is providing inadequate representation is commonly referred to as a *Marsden* motion. (*People v. Smith* (2003) 30 Cal.4th 581, 604.) Pursuant to *Marsden* procedure, when, after hearing from the defendant and counsel, a trial court has found counsel "is not providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result," it should appoint new counsel. (*Smith*, at p. 604.) Juvenile courts have allowed parents who have been appointed counsel in dependency proceedings to bring

5.

*Marsden*-type motions. (*In re V.V.* (2010) 188 Cal.App.4th 392, 398; see *In re Z.N.* (2009) 181 Cal.App.4th 282, 289 [*Marsden* principles apply by analogy to dependency proceedings].)

Mother does not allege the juvenile court wrongly relieved her attorney or appointed new counsel. Rather, she makes complaints about her attorney's representation and conduct at the *Marsden* hearing, including that he refused to file certain motions on her behalf, failed to contest removal, would not meet with her in person, and falsely accused her of recording him. Mother contends the court erred at the hearing by focusing more on her behavior than her complaints about her attorney; not adequately examining whether her counsel's conduct "compromised [her] rights"; ignoring several of her claims "in evaluating whether communication was irreparably broken"; and "ignoring the actual breakdown in representation."

We reject mother's claims; she has not demonstrated prejudice stemming from any of the errors she alleges occurred at the *Marsden* hearing and thus has failed to demonstrate reversible error.

The appellant has the burden of supporting each contention with argument and citation to authority that demonstrates *prejudice* resulting from any alleged error. (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277.) This applies to appellants who represent themselves on appeal. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246–1247.) In a general sense, in determining prejudice, we look to whether the alleged error had an effect adverse to the appellant on the result of the proceeding. (See *In re Celine R.* (2003) 31 Cal.4th 45, 60 [applying *Watson*[6] standard of prejudice]; *In re Mark A.* (2007) 156 Cal.App.4th 1124 [applying *Chapman*[7] standard of prejudice].)

---

[6]     *People v. Watson* (1956) 46 Cal.2d 818.

[7]     *Chapman v. State of California* (1967) 386 U.S. 18.

Here, as a result of the *Marsden* hearing conducted by the juvenile court, mother's attorney was relieved, and she was appointed new counsel.  That is, she received the relief that the *Marsden* procedure provides.  As such, mother has not shown prejudice arising from her alleged errors.  She does not explain how any difference in how the *Marsden* hearing was conducted would have resulted in a different outcome of that hearing or any other proceeding below.

Mother has failed to show reversible error, and we affirm the order.

**<u>DISPOSITION</u>**

The juvenile court's order from which mother appeals is affirmed.